[No. C035745. Third Dist. Dec. 26, 2001.]

DELTAKEEPER et al., Plaintiffs and Appellants, v.
OAKDALE IRRIGATION DISTRICT et al., Defendants and Respondents;
STOCKTON EAST WATER DISTRICT, Real Party in Interest and
Respondent.

1094

## COUNSEL

Brandt-Hawley & Zoia and Rose M. Zoia for Plaintiffs and Appellants.

O'Laughlin & Paris and Tim O'Laughlin for Defendant and Respondent Oakdale Irrigation District.

Steven P. Emrick for Defendant and Respondent South San Joaquin Irrigation District.

McDonough, Holland & Allen, Virginia Cahill, Arthur F. Godwin and J. Mark Atlas for Defendant and Respondent City of Stockton.

Herum, Crabtree, Dyer, Zolezzi & Terpstra and Jeanne Zolezzi for Real Party in Interest and Respondent.

## OPINION

**BLEASE, J.**—Plaintiffs Deltakeeper, San Joaquin Audubon Society, California Sportfishing Protection Alliance, and the Sierra Club (collectively plaintiffs) appeal from an order granting a motion to dismiss the action for failure to join indispensable parties. (Code Civ. Proc., § 389, subd. (b).)[1]

The named defendants, Oakdale Irrigation District (Oakdale), South San Joaquin Irrigation District (South San Joaquin) and Stockton East Water District (Stockton East), entered into the joint district water purchase agreement (the Agreement), together with the City of Stockton (City), Lincoln Village Maintenance District (Lincoln Village), Colonial Heights Maintenance District (Colonial Heights), and Central San Joaquin Water Conservation District (Central), for the sale of water by Oakdale and South San Joaquin to the other parties to the Agreement.

As the lead agencies, Oakdale and South San Joaquin prepared an environmental impact report (EIR) for the project, which the plaintiffs

---

[1] References to a section are to the Code of Civil Procedure, unless otherwise specified.

challenged by a petition for a writ of mandate.[2] The trial court entered an order dismissing the petition for failure to join City, Lincoln Village and Colonial Heights as indispensable parties.[3] We disagree.

The named parties, as proponents and beneficiaries of, and parties to, the Agreement, have an interest in the California Environmental Quality Act (CEQA) litigation sufficient to protect the interests of those not joined. They have economic interests, as sellers and a purchaser of the water, in the success of the Agreement and can be expected to argue vigorously in favor of the adequacy of the EIR. Moreover, a separate agreement (the Stockton Agreement) binds a named party, Stockton East, to a collective litigation decision in which the nonjoined parties participate in the "control of litigation regarding the Joint District Water Purchase Agreement." The nonjoined parties concede the defendants can fully represent their interests in the CEQA litigation.[4]

We shall reverse the judgment (order dismissing the petition).

FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 1997, Oakdale, South San Joaquin, Stockton East, City, Lincoln Village, Colonial Heights and Central entered into the Agreement.

The Agreement recites that the "joint districts," i.e., the named parties Oakdale and South San Joaquin, own water rights to waters of the Stanislaus River, and the "purchasers," Stockton East, a named party, City, Lincoln Village, and Colonial Heights, desire to purchase water from them. The Agreement provides the water to be purchased is surplus to the current needs of the joint districts, and the quantity and quality of water being used by the purchasers are threatened by the over drafting of groundwater.

The amount of water to be transferred is dependent on the United States Bureau of Reclamation's forecast of inflow to the New Melones Reservoir. The amount the joint districts agreed to sell ranges from 30,000 acre-feet to

---

[2]The EIR was adopted at a joint public meeting of Oakdale and South San Joaquin. It does not appear whether the proceeding was required by law and thereby made subject to review under Code of Civil Procedure section 1094.5. (Pub. Resources Code, § 21168.) The petition is framed as a proceeding both in administrative and traditional mandate. (Pub. Resources Code, §§ 21168, 21168.5; Code Civ. Proc., §§ 1094.5, 1085.) Since no issue of consequence turns on the distinction, we have no occasion to determine which is appropriate.

[3]There is no claim that Central is an indispensable party to the CEQA litigation.

[4]At oral argument, counsel for the nonjoined parties conceded, in answer to a question from the court, their presence would not make one whit of difference to the CEQA action. "I've conceded the point. On a CEQA matter, they are not going to make one whit of difference . . . ."

8,000 acre-feet per year, depending on the water supply forecast. The purchasers are required to pay for the water, whether or not they use it. The obligation of the joint districts to deliver water, and the obligation of the purchasers to pay for water, is conditioned upon the adoption of an EIR meeting the requirements of CEQA.

The Agreement provides the joint districts are the lead agencies for purposes of CEQA. The expenses of environmental review and approval are to be split equally between the purchasers and the joint districts. The original agreement provided that if final CEQA action was not satisfied by December 31, 1998, either Oakdale, San Joaquin, or any purchaser could cancel the Agreement.[5] The Agreement also provides that any party to the agreement may terminate it if the party determines the burdens of the agreement, including CEQA compliance, outweigh its benefits.

The Agreement states that City, Lincoln Village and Colonial Heights designate Stockton East to carry out their obligations under the agreement, including paying for, receiving, treating, transporting and distributing water purchased under the agreement. However, each party is obligated to defend its own interests in litigation or regulatory action involving the Agreement, including compliance with CEQA. Notwithstanding, on April 1, 1997, City, Lincoln Village, Colonial Heights, Stockton East, and California Water Service Company entered into a separate agreement (the Stockton Agreement) which provides for the division, use, and payment for the water sold by Oakdale and South San Joaquin, and for the joint control of litigation. Paragraph 5(a) of the Stockton Agreement provides in part: "Except for decisions under paragraph 20 B (3) of the Joint District Water Purchase Agreement,[6] whenever the Joint District Water Purchase Agreement gives the right to make a decision to Stockton-East or to 'Purchasers,' or whenever decisions related to that Agreement must be made, including, but not limited to, *control of litigation* regarding the Joint District Water Purchase Agreement, Stockton-East shall confer with the Urban Contractors [City, California Water Service Company, Lincoln Village, and Colonial Heights], and *the Parties to this Agreement shall determine the decision to be made or action to be taken.* Stockton-East shall have one vote, worth 25 per cent. City, Cal Water and the County of San Joaquin on behalf of Lincoln Village and

[5]This date was extended to December 31, 1999, by subsequent agreement.

[6]Paragraph 20B(3) of the water purchase contract states: "If, in the judgment of any Purchaser, the costs of litigation, regulatory review, compliance with regulatory conditions, CEQA compliance and/or mitigation, or relief afforded to plaintiffs in an action brought in State or Federal Court involving this Agreement are too costly in relation to the benefits to be received, then any Purchaser may terminate this Agreement."

The reference to this paragraph in the Stockton Agreement makes clear the provision for the "control of litigation" involving the Agreement extends to "CEQA compliance . . . ."

Colonial Heights combined shall share three votes, or 75 per cent of the total, with each entity's vote weighted according to the percentage of water allocated to it at the time the decision is to be made. The decision receiving more than 50 per cent of the total vote shall be selected." (Italics added.)

This provision binds Stockton East to a collective litigation decision arrived at by a procedure by which the nonjoined parties, City, Lincoln Village and Colonial Heights, together with Stockton East, "shall determine the decision to be made or action to be taken" relating to the Agreement, including the "control of litigation . . . ."

In December 1997, the lead agencies released a "Draft Initial Study and Proposed Negative Declaration for the Oakdale Irrigation District/South San Joaquin Irrigation District Water Transfer Project." The negative declaration generated substantial public comment and the lead agencies decided to prepare an EIR.

The lead agencies released a draft EIR (DEIR) in March 1999. The DEIR contains a project description which states in part: "The OID/SSJID [Oakdale/South San Joaquin] are the lead agencies for the preparation of this Draft EIR for the proposed transfer of up to 30,000 acre feet (AF) of surface water annually over a 10-year period from OID and SSJID through existing conveyance facilities to the SEWD [Stockton East] and its customers, the City of Stockton, and the Lincoln Village and Colonial Heights Maintenance Districts. The transferred water would be used by SEWD and its customers primarily for direct municipal and industrial use by the City of Stockton, California Water Service Company and the Lincoln Village and Colonial Heights Maintenance Districts in order to reduce groundwater pumping and enhance recovery of the Eastern San Joaquin Groundwater Basin. OID/SSJID has the option to extend the terms of the water transfer agreement after the initial 10-year term, providing all parties agree, and appropriate additional environmental documentation is completed."

After considering the public comments received regarding the DEIR, the lead agencies prepared a final EIR which was adopted and certified at a joint public meeting on July 27, 1999. A notice of determination was filed on the same day.

Pursuant to Public Resources Code section 21167, subdivision (c), an action alleging that an EIR does not comply with CEQA must be commenced within 30 days from the date the lead agency files the notice of determination. On August 26, 1999, plaintiffs filed a petition for writ of mandamus naming Oakdale and South San Joaquin as respondents, and

Stockton East as real parties in interest. The petition alleged the EIR failed to address adequately the environmental impacts of the project.[7] The petition sought a writ of mandate ordering respondents to set aside and void their certification of the EIR and approval of the project, and issue a permanent injunction enjoining respondents from engaging in any activity connected with the project until the project approvals fully comply with CEQA.

On September 27, 1999, plaintiffs filed an amended petition for writ of mandate. The amended petition added the Sierra Club as a petitioner and purported to add the City as a respondent in its capacity as a responsible agency.[8] The relief requested remained unchanged from the original petition.

On December 13, 1999, the named defendants filed a motion to dismiss the case for failure to join City, Lincoln Village And Colonial Heights as necessary and indispensable parties. The motion argued that since the 30-day statute of limitations had expired they could no longer be joined and the case should be dismissed.

DISCUSSION

I

Section 389 governs the joinder of parties. It provides:

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good

---

[7] The original petition and first amended petition also alleged a violation of the California Endangered Species Act. A second amended petition, filed November 30, 1999, removed the Endangered Species Act allegations. The CEQA allegations and the relief sought remain virtually unchanged.

[8] Plaintiffs argue the amendment naming City as respondent was timely because it was filed within 30 days of City's certification of the EIR. Public Resources Code section 21167, subdivision (c), states that the statute of limitations runs from the date the *lead agency* files the required notice, in this case the notice of determination. Oakdale and San Joaquin acted as the lead agency for the environmental review of the project. For purposes of the statute of limitations, the date on which the responsible agency certified the EIR is immaterial.

conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

 Subdivision (a) of section 389 defines the "persons who ought to be joined if possible (sometimes referred to as 'necessary' parties)." (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149 [63 Cal.Rptr.2d 277].) A determination that the persons are necessary parties is the predicate for the determination whether they are indispensable parties. Thus, subdivision (b) sets forth the factors the court should consider in determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as *indispensable.*" (Italics added.)

 Plaintiffs contend City, Lincoln Village and Colonial Heights are neither necessary parties under subdivision (a) nor indispensable parties under subdivision (b) of section 389.

II

*Necessary Party*

 Subdivision (a) of section 389 "mandates that, '[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made.' [Citations.]" (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 793 [82 Cal.Rptr.2d 63], quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 389, p. 223.)

Subdivision (a) of section 389, the necessary party provision, contains three distinct clauses. " 'Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the

person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability.'" (*Countrywide Home Loans, Inc. v. Superior Court, supra,* 69 Cal.App.4th at pp. 792-793, quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra,* foll. § 389, p. 224.)

The first clause, the "complete relief" clause, focuses not on whether complete relief can be afforded all possible parties to the action, but on whether complete relief can be afforded the parties named in the action. (*Countrywide Home Loans, Inc. v. Superior Court, supra,* 69 Cal.App.4th at pp. 793-794.)

In this case there is no risk of partial or hollow relief to the named parties. Resolution of the adequacy of the EIR will provide them complete relief. Moreover, further litigation regarding the EIR is foreclosed by the limitations period of Public Resources Code section 21167.

As to the second clause, City, Lincoln Village and Colonial Heights claim an interest relating to the subject matter of the action, that a determination the EIR is inadequate would at least delay if not completely thwart their ability to purchase water under the water transfer agreement. While an adverse determination on the EIR might delay putting the Agreement into effect, that also would be the case if they were parties to the litigation. However, the pertinent question is whether their absence from the litigation would impair their ability to protect their interests in the "subject of the action," the validity of the CEQA determination.[9]

In *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868 [65 Cal.Rptr.2d 786], the Attorney General brought an action against a community redevelopment agency to set aside the agency's contract with an American Indian tribe. The tribe was not named as a party. The contract provided the redevelopment agency would transfer property to the tribe for the purpose of developing a gaming casino. The Attorney General challenged the legality of the redevelopment agency's actions in agreeing to relinquish city-owned property and placing it beyond the state's civil and criminal jurisdiction. The redevelopment agency sought dismissal

---

[9]As noted, the second clause of section 389, subdivision (a), measures the impact of the party's absence on whether "(i) as a practical matter [the absence would] impair or impede his ability to protect that interest," to wit, "an interest relating to the subject of the action . . . ." In this case the subject of the action is the validity of the CEQA determination.

of the Attorney General's complaint on the ground the tribe was an indispensable party not amenable to suit because of sovereign immunity.

In construing the second clause of section 389, subdivision (a), the court said it was unclear whether, as a practical matter, the action would impede the tribe's ability to protect its interest. The court stated: "The issue raised in the present case is the legality of the [redevelopment agency's] actions in agreeing to relinquish City-owned property and placing it beyond the reach of the civil and criminal jurisdiction of the state. The actions of the Tribe in entering into the [contract with the redevelopment agency] are not challenged. The Tribe's ability to look after its own interests in this setting would be limited to the opportunity to argue that the [redevelopment agency's] actions were permitted by California law. It would thus appear that, although the Tribe and the [redevelopment agency] have interests under the [contract] that are not identical, the Tribe's object in the present litigation— establishing that the Agency acted lawfully in entering into the [contract]— would duplicate that of the Agency and would be adequately represented by the Agency in the present litigation." (*People ex rel. Lungren v. Community Redevelopment Agency, supra*, 56 Cal.App.4th at p. 877.)

This case presents an analogous situation. At issue is the adequacy of the EIR; the rights and obligations of the parties to the water transfer agreement are not challenged. Rather, at issue is a precondition to enforcement of the Agreement, compliance with CEQA, imposed by law. Plaintiffs timely named as defendants three parties to the Agreement, all of whom have a strong interest in upholding the EIR so as to obtain the benefits of the Agreement. A party's ability to protect its interest is not impaired or impeded as a practical matter where a joined party has the same interest in the litigation. (*Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 161 [217 Cal.Rptr. 893].)

Respondents argue that Stockton East's interest in the Agreement is not the same as the interests of City, Lincoln Village or Colonial Heights, and for this reason Stockton East is unable to protect adequately the interests of the nonjoined parties. They point out that under the separate Stockton Agreement, City, Lincoln Village and Colonial Heights have the right to purchase all the water delivered to Stockton East under the Agreement, and Stockton East may resell water only if one of the other purchasers notifies it that the water allocated to it may be used elsewhere. Defendants argue this shows Stockton East is merely a conduit agency, whose only interest is the payment it receives for conveying and treating the water sold and delivered by Oakdale and South San Joaquin. We disagree.

Stockton East, as well as the joint districts, has the same interest in fulfilling the contract and validating the EIR as a precondition to that end.

The fact the parties may have differing interests in the transfer of water under the Agreement does not mean they have differing interests in the CEQA litigation. As in *People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th 868, the nonjoined purchasers' litigation objective would duplicate the objective of the joined defendants. For this reason alone the interests of the nonjoined parties are adequately represented by the defendants.

Moreover, under the separate Stockton Agreement, City, Lincoln Village and Colonial Heights have a vote in the "control of litigation regarding the Joint District Water Purchase Agreement" which is binding on the defendant Stockton East. By this means, the nonjoined parties have the right to participate in and control the CEQA litigation through a collective decision which binds a named party to the action, Stockton East.[10] As noted, the nonjoined parties do not dispute that their interests in the CEQA litigation can be adequately represented by the defendants. (See fn. 4, *ante.*)

Further, the named parties would not be prejudiced by a judgment in this case. They are present to protect their interests in upholding the adequacy of the EIR, and there is no risk the nonjoined parties could force them to honor the water transfer agreement if the EIR is found not to comply with CEQA because the agreement provides an escape clause for the parties in the event the project fails to comply with CEQA. (See fn. 6, *ante.*)

*Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686 [49 Cal.Rptr.2d 847], relied upon by defendants, is distinguishable. The plaintiff challenged the adequacy of an EIR in an action that named as parties the lead agency, the San Diego Unified Port District, and the City of San Diego, in which the project for the construction of a marina was located. The landowner, Chula Vista Partners, whose land was to be acquired to complete the project, was not named as a party. The draft escrow instructions included a provision giving the district " 'the absolute right to cancel escrow' if a legal challenge to the project is filed under CEQA." (*Id.* at p. 691.) The court rejected the plaintiff's argument that the lead agency, the district, adequately represented the landowner's interest because "the District cannot be expected to represent the interests of Chula Vista Capital in

---

[10]"Stockton-East shall have one vote, worth 25 per cent. City, Cal Water and the County of San Joaquin on behalf of Lincoln Village and Colonial Heights combined shall share three votes, or 75 per cent of the total, with each entity's vote weighted according to the percentage of water allocated to it at the time the decision is to be made.

"The decision receiving more than 50 per cent of the total vote shall be selected . . ." and "shall determine the decision to be made or action to be taken."

Stockton East, as a participant, is bound by the litigation decision taken, which governs its conduct in the CEQA action.

the approval of the EIR for this specific plan. The District is only interested in placing the marina on this site, not in representing the concerns of any particular owner of that site." (*Id.* at p. 695, italics omitted.) The court concluded that "under the circumstances here, where the District is neither the developer nor (obviously) the landowner, it cannot be expected to represent the interests of [the landowner], thus making [the landowner] an indispensable party to the proceeding." (*Id.* at p. 690.)

*Beresford Neighborhood Assn. v. City of San Mateo* (1989) 207 Cal.App.3d 1180 [255 Cal.Rptr. 434], is analogous to *Save Our Bay, Inc.* The city granted a developer's application for certification of an EIR, permit approvals, a zoning variance, and general plan amendments. The complaint named only the city as defendant. The court held the city could not be expected to adequately represent the developer's interest in litigation where the city had no special interest in the project. (*Id.* at p. 1189.)

These cases are inapposite. Unlike *Save Our Bay, Inc.* and *Beresford Neighborhood Assn.*, the joint districts and Stockton East are proponents and parties to the Agreement and developers of the water transfer project, the joint districts as sellers of water and Stockton East as purchaser of the water. Although the joint districts prepared the EIR as lead agencies, they have an economic interest, as sellers of the water, in the Agreement which constitutes the project and can be expected vigorously to argue in favor of the adequacy of the EIR. They are developers of the project.

Moreover, the separate Stockton Agreement, between Stockton East and the purchasers provided, in pertinent part, that: "whenever decisions related to . . . control of litigation regarding the Joint District Water Purchase Agreement, Stockton-East [Stockton East, a party to the action] shall confer with the Urban Contractors [California Water Service Company, Lincoln Village, Colonial Heights, and City], and the Parties to this Agreement shall determine the decision to be made or action to be taken." This gives the purchasers a voice in the litigation decisions involving the present action through participation in a collective decision which is binding on Stockton East and therefore their interests are represented directly in the action.

The final element of subdivision (a) of section 389 requires us to consider whether a decision made in the absence of the nonjoined parties would leave any of the parties subject to inconsistent obligations.

There is no risk of double or inconsistent liability here. If the EIR is determined to be inadequate, any of the named defendants may cancel the Agreement. In that event they would have a defense of legal impossibility to

any enforcement action brought by the nonjoined parties. (See *People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th at p. 879, fn. 7.)

Notwithstanding, City, Lincoln Village and Colonial Heights claim they are "materially interested" in the subject of the litigation because of the practical effect the CEQA litigation will have on them as parties to the water transfer agreement. (*Countrywide Home Loans, Inc. v. Superior Court, supra,* 69 Cal.App.4th at p. 793.) The nonjoined parties have a contractual interest which would be injuriously affected by a judgment declaring the EIR to be inadequate. Since such a judgment would stop the transfer of water under the agreement, the effect on their interests in the water transfer agreement would be immediate, substantial, and pecuniary. In this case we assume, without deciding, that such interests are sufficient to make the nonjoined parties "necessary parties," notwithstanding their interests in the CEQA litigation, can be adequately represented by the defendants. (See *People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th at pp. 877-879.) We proceed on that assumption.

### III

### *Indispensable Party*

Under subdivision (b) of section 389 we must determine whether a necessary party to the action is indispensable.

■ A party is indispensable only in the "conclusory sense that in [its] absence, the court has decided the action should be dismissed. Where the decision is to proceed the court has the power to make a legally binding adjudication between the parties properly before it." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra,* foll. § 389, p. 222.)

■ The Supreme Court has warned that courts must " 'be careful to avoid converting [section 389 from] a discretionary power or a rule of fairness . . . into an arbitrary and burdensome requirement which may thwart rather than accomplish justice.' [Citation.]" (*Countrywide Home Loans, Inc. v. Superior Court, supra,* 69 Cal.App.4th at p. 793, quoting *Bank of California v. Superior Court* (1940) 16 Cal.2d 516, 521 [106 P.2d 879].)

Before examining these factors, we turn to defendants' argument that the trial court's decision is supported by established precedent holding that actions involving rights under a contract should include all the parties to the contract. (*Lomayaktewa v. Hathaway* (9th Cir. 1975) 520 F.2d 1324, 1325.) We agree that ordinarily is the case.

"Ordinarily where the rights involved in litigation arise upon a contract, courts refuse to adjudicate the rights of some of the parties to the contract if the others are not before it." (*Nat. Licorice Co. v. Labor Board* (1940) 309 U.S. 350, 363 [60 S.Ct. 569, 577, 84 L.Ed. 799].) In *People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th at pages 877-878, the court recognized this general rule, but noted that in the cases citing it as a truism, "the impact of the action on the absent parties is such that they are indeed required for an adequate resolution of the case." (*Id.* at p. 878.)

While such precedent may lead us to conclude the nonjoined parties are necessary parties, it does not oblige us to conclude the parties are indispensable, requiring thereby that the action be dismissed. Indeed, if a party to a contract were always indispensable in a suit to set aside the contract, it would eliminate the exercise of discretion accorded to the trial court under section 389, subdivision (b). (*People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th at pp. 877-878.)

In *Nat. Licorice Co. v. Labor Board, supra,* 309 U.S. 350, the National Labor Relations Board (NLRB) instituted proceedings against an employer to enjoin it from enforcing a contract with its employees which violated the National Labor Relations Act. None of the employees, parties to the contract, were made parties to the NLRB proceeding. In answer to the claim the action could not proceed without their joinder, the Supreme Court stated, "different considerations may apply . . . where the rights asserted arise independently of any contract which an adverse party may have made with another, not a party to the suit, even though their assertion may affect the ability of the former to fulfill his contract. The rights asserted in the suit and those arising upon the contract are distinct and separate so that the Court may, in a proper case, proceed to judgment without joining other parties to the contract, shaping its decree in such manner as to preserve the rights of those not before it." (*Id.* at p. 363 [60 S.Ct. at p. 577].)

In this case, the fact the action may affect the interests of the nonjoined parties in the underlying contract does not dictate the conclusion they are indispensable parties. Section 389 contains no such direction. Moreover, the rights asserted in this litigation are independent of the contractual rights to water established in the Agreement.

■ In determining whether a party is indispensable, we consider the four factors listed in the statute. The standard of review of a trial court's determination pursuant to section 389, subdivision (b) is abuse of discretion. (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149 [63 Cal.Rptr.2d 277].) "The subdivision (b) factors

'are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another.' [Citation.]" (*Ibid.*)

A. *Is the judgment prejudicial to parties or nonparties?*

 The first factor is "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties."

"This is essentially the same assessment that must be made under subdivision (a) in determining whether a party's absence would impair or impede that party's ability to protect his or her interests, and determining whether proceeding to judgment would subject existing parties to inconsistent obligations." (*People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th at p. 880.)

As we have determined, the nonjoined parties have interests in the litigation but the interests are adequately protected by the parties to the action.

B. *Are there measures by which prejudice can be lessened or avoided?*

In assessing the indispensability of the nonjoined parties, we must ask what contribution these parties could make to the proceeding before the trial court. In other words, what precisely are they foreclosed from doing by not being named as parties to the lawsuit?

A proceeding to challenge an EIR is unlike a trial of a typical contract action in which each party may present evidence favorable to its position. At a hearing challenging an EIR, the parties are limited to the issue whether substantial evidence supports the lead agency's determination the EIR is adequate. (Pub. Resources Code, §§ 21168, 21168.5; *San Joaquin Raptor/ Wildlife Rescue Center v. County of Stanislaus* (1994) 27 Cal.App.4th 713, 722 [32 Cal.Rptr.2d 704]; *River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, 168 [43 Cal.Rptr.2d 501]; *City of Fremont v. San Francisco Bay Area Rapid Transit Dist.* (1995) 34 Cal.App.4th 1780, 1786 [41 Cal.Rptr.2d 157].) No new evidence may be presented. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 573, 576 [38 Cal.Rptr.2d 139, 888 P.2d 1268]; *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1390 [61 Cal.Rptr.2d 297].)

The substantial evidence standard of review performed by the trial court is analogous to the standard of review on appeal. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 565 [38 Cal.Rptr.2d 139, 888

P.2d 1268]; *River Valley Preservation Project v. Metropolitan Transit Development Bd., supra,* 37 Cal.App.4th at p. 168; *Long Beach Sav. & Loan Assn. v. Long Beach Redevelopment Agency* (1986) 188 Cal.App.3d 249, 260 [232 Cal.Rptr. 772].) The argument the purchasers would have made before the trial court is, in fact, the same argument they would make on appeal if the trial court's decision were to be appealed.

Thus, had City, Lincoln Village and Colonial Heights been joined, they would have been limited at trial to the same legal arguments presented by the lead agencies and Stockton East, that the lead agency's certification of the EIR was supported by substantial evidence. Their arguments regarding the sufficiency of the evidence necessarily would be based on the same evidence addressed by the joined parties. And, as noted, Stockton East is bound to a collective litigation decision involving the nonjoined parties.

### C. *Will the judgment rendered be adequate?*

As previously explained, any judgment rendered will adequately adjudicate the rights of the parties before the court. The only question before the court is whether the EIR is adequate.

### D. *Will the plaintiff have an adequate remedy if the action is dismissed?*

The final factor clearly weighs in favor of not dismissing the action. If it is dismissed, the plaintiffs will have no recourse, as the statute of limitations has run for joining more parties.

In reviewing these factors we find that two of them weigh heavily in favor of allowing the action to proceed, and the other two factors tend to weigh in favor of allowing the action to proceed.

Finally, we must consider the underlying policies of the CEQA legislation. ■ "The foremost principle under CEQA is that the Legislature intended the act 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' [Citation.]" (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 390 [253 Cal.Rptr. 426, 764 P.2d 278].) The purpose of an EIR is " 'to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment . . . .' ([Pub. Resources Code,] § 21061; Guidelines, § 15003, subds. (b)-(e).)" (*Id.* at p. 391, fn. omitted.) "The EIR is the primary means of achieving the Legislature's considered declaration that it is the policy of this state to 'take all action

necessary to protect, rehabilitate, and enhance the environmental quality of the state.' ([Pub. Resources Code,] § 21001, subd (a).)" (*Id.* at p. 392.) "[T]he ultimate decision of whether to approve a project, be that decision right or wrong, is a nullity if based upon an EIR that does not provide the decision-makers, and the public, with the information about the project that is required by CEQA." (*Santiago County Water Dist. v. County of Orange* (1981) 118 Cal.App.3d 818, 829 [173 Cal.Rptr. 602].)

At the heart of CEQA is the EIR, the purpose of which is to inform both decision makers and the public of the environmental consequences of a proposed project. (*Laurel Heights Improvement Assn. v. Regents of University of California, supra,* 47 Cal.3d at p. 392.) The public has a right to insist on the adequacy of the environmental document upon which the agency makes its decision, especially when the agency is one of the project proponents. Were we to find City, Lincoln Village and Colonial Heights to be indispensable parties, the adequacy of the EIR would escape scrutiny. Such a harsh result is unnecessary where other parties have a unity of interest in the CEQA litigation.

In light of the admonishment that section 389 should not be converted from a rule of fairness " 'into an arbitrary and burdensome requirement which may thwart rather than accomplish justice[,]' " (*Countrywide Home Loans, Inc. v. Superior Court, supra,* 69 Cal.App.4th at p. 793), we cannot say in equity and good conscience that this action should be dismissed.

### DISPOSITION

The judgment (order dismissing the petition) is reversed. Petitioners are awarded their costs on appeal.

Scotland, P. J., and Morrison, J., concurred.