Filed 4/7/16  Tan v. Chen CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VIVIAN TAN,<br><br>  Plaintiff , Cross-defendant and Appellant,<br><br>v.<br><br>LILY CHEN,<br><br>  Defendant, Cross-complainant and Respondent. | A141615<br><br>(Contra Costa County Super. Ct. No. MSC10-02995) |

This litigation arises from a verbal agreement between appellant Vivian Tan and respondent Lily Chen regarding the use of an album of original Chinese paintings that was owned by Tan's grandmother.  Tan appeals from a judgment following a bench trial in which the court found in favor of Chen on all of Tan's claims for relief, concluded the agreement was unenforceable due to the parties' mistake about the value of the album, and ordered Tan to return $70,000 paid to her by Chen under the terms of the agreement.  We affirm.

FACTS AND PROCEDURAL HISTORY

Chen lived next door to Jian Jun Lu, an artist.  Through her family, Chen met Tan, who was then a law student, and Tan's mother Felicia,[1] who had a background in the field of fine arts.  In 2008, Tan, Chen and Lu entered into a verbal agreement to

---

[1]  We refer to Felicia by her first name to avoid confusion.  Later in our opinion, we do the same when referring to Tan's aunt, Tammy Tan.

undertake an art project in which Lu would create oil renderings of classical Chinese paintings. Chen did not have any expertise in art, but acted as Lu's agent during the project.

To facilitate the project, Tan agreed to provide Lu with an album of 12 traditional Chinese paintings owned by her grandmother (the Luo Han album), though she did not disclose the identity of the album's owner to Chen or Lu. Tan advised Chen that the album's owner would lend it to the project for one year for a fee of $120,000, and Chen and Lu verbally agreed to this arrangement. At the time of the discussions, Felicia had estimated the value of the album to be $1.2 million.

The $120,000 fee for the use of the album (which Chen understood to be a licensing fee) was supposed to come out of the sales proceeds of the oil paintings produced by Lu. Tan and Felicia told Chen they needed to come up with a way to get the money up front, and Chen borrowed $70,000 from her home equity line. The money was wired to Tan's aunt in Taiwan, with Tan's grandmother to be the ultimate recipient of the funds. Tan's aunt delivered the album from Taiwan in October 2008 and Tan gave it to Chen so Lu could use it for his paintings. Tan and Felicia became dissatisfied with Lu's work on the art project and took the album back. They gave it to Chen in November 2008.

On June 24, 2010, Tan filed this civil action against Chen and Lu. Tan's amended complaint contained causes of action for civil conspiracy, fraud, deceit, promissory fraud, conversion, breach of contract, and breach of the implied covenant of good faith and fair dealing. Among other things, the prayer for relief sought damages in the amount of $50,000 plus interest (representing the balance allegedly due on the $120,000 fee for use of the album), damages attributable to economic loss occasioned by Chen's retention of the album, punitive damages, and an equitable order requiring Chen and Lu to return the album to Tan. The court sustained Chen's demurrer with leave to amend, brought on the ground that Tan did not own the album at issue and the true owner was a necessary and indispensible party. (See Code Civ. Proc., § 389.)

2

Tan filed a second amended complaint combining the causes of action for fraud and deceit and adding causes of action for declaratory relief, injunction and claim and delivery. This pleading also alleged that Tan had obtained an assignment from her grandmother with respect to all rights and claims arising from the album. The court overruled Chen's demurrer to the second amended complaint, and Chen filed a cross-complaint against Tan and Lu asserting causes of action for fraud and deceit, contractual indemnity and rescission. The cross-complaint alleged Chen had been induced to pay a licensing fee based on the false representation that the album was worth more than $1 million.

Tan sought a writ of possession directing Chen to return the album. Chen filed opposition indicating she would agree to do so if (1) Tan agreed not to transfer the album to another party until the rightful owner (who was then still undisclosed) had been determined; (2) a mutually agreed upon appraiser examined the album and documented its condition before transfer to avoid future claims the album had been damaged by Chen; and (3) Tan agreed to fully indemnify Chen for claims by third parties relating to the album. The court denied the writ but issued an order directing Chen to return the album. Chen complied.

The case proceeded to a bench trial at which Tan, representing herself, testified that Chen had asked her for help in securing the album so Lu could use it as inspiration and source material for his oil paintings; that she (Tan) did not disclose her grandmother was the owner of the album because her grandmother wished to keep her identity private; that after Lu failed to perform, Chen told Tan she wanted to keep the album because the "lease" had not expired and she wanted to find a replacement artist to do the project; and that Chen did not return the album until she was required by a court order to do so, despite Tan's urging.

Chen testified she did not know anything about art but was encouraged by Tan and Felicia to help Lu; Tan and Felicia proposed the art project and told her the owner of the album had to be paid a license fee of $120,000; Tan and Felicia told her they needed to get the album quickly because the owner was in her nineties and might die, convincing

3

Chen to borrow $70,000 from her home equity line; Chen considered the art project to be over after Tan and Felicia became dissatisfied with Lu; Tan and Felicia insisted she take the album and refused her offers to return it; and that Tan did not tell Chen she wanted the album back until she filed this lawsuit in 2010. Chen also presented the testimony of Arjun Gupta, an expert in Asian art, who opined the album was worth between $4,500 and $6,000.

The trial court found in favor of Chen and Lu on each cause of action in Tan's second amended complaint, concluding there was no enforceable agreement between the parties. In its statement of decision, the court explained: "There was no written contract and the oral representations between the parties were never specific enough to constitute an enforceable contract of any kind. Moreover, the evidence was overwhelming that the central object of any alleged agreement, the Luo Han Album, was not the rare art object worth more than $1,000,000 that it was represented to be by [Tan] and her mother. Instead, the court finds, based on the persuasive testimony of Arjun Gupta that the [Luo] Han Album is worth no more than $6,000. While insufficient evidence was presented to prove that [Tan] knowingly or fraudulently misrepresented the value of the Album to [Chen and Lu], it is clear that all parties were so mistaken regarding the Album's value as to render any possible agreement between the parties unenforceable."

The court found in favor of Chen on her cross-complaint and ordered Tan to return the $70,000 fee paid by Chen. "Insufficient evidence was presented to allow this court to conclude that Vivian Tan knowingly and fraudulently represented that the [Luo] Han Album was worth more than $1,000,000 when it actually was worth only a few thousand dollars. Similarly, Chen failed to meet her burden of proof to show that Vivian Tan knowingly tricked Chen into paying the $70,000 fee to obtain the Album when the Album itself was not even worth one tenth of that amount. At all times relevant to these claims, Vivian Tan was a young law student with only limited knowledge of the fine art business, and an unlikely sophisticated swindler as Chen and Lu attempted to establish. From the evidence presented, Chen may have been able to establish such claims as against Vivian's mother, Felicia, but she is not a party to this litigation. The court finds

4

in favor of Vivian Tan on the Fraud and Intentional Misrepresentation causes of action, as well as the claim for punitive damages in Lily Chen's cross-complaint. [¶] However, as previously noted sufficient evidence was presented to establish that there was no enforceable contract between these parties. Vivian Tan is legally obligated to return the $70,000 payment made by Chen to secure the use of the Album under either the Rescission or Negligent Misrepresentation causes of action. The court therefore grants Chen's request for rescission and awards $70,000 against Vivian Tan."[2]

## DISCUSSION

A party may rescind a contract if his or her consent was given by mistake. (Civ. Code, § 1689, subd. (b)(1);[3] *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278.) " ' "Rescission for mistake . . . is a remedy by means of which a party may be relieved of the burdens and may procure restitutionary redress respecting a contract which was defective at its inception because consent was not freely or knowingly given." ' " (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1145.) We apply the substantial evidence standard in reviewing a trial court's finding that a mistake of fact was made. (See *Williams v. Puccinelli* (1965) 236 Cal.App.2d 512, 515–516.)

Tan does not challenge the trial court's determination that the parties were mistaken as to the value of the album, nor does she dispute that such a mistake supports the remedy of rescission. Rather, she claims that Chen's rescission of the verbal agreement was not effective because Chen did not comply with section 1691, the relevant portions of which provide: "Subject to Section 1693, to effect a rescission a party to the contract must, *promptly* upon discovering the facts which entitle him to rescind . . . : [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise . . . ." (Italics added.)

---

[2] The court also found against Lu on his affirmative claims. We do not discuss those claims as he is not a party to this appeal.

[3] Further statutory references are to the Civil Code unless otherwise indicated.

5

We reject Tan's argument that Chen's delay in returning the album defeats her claim for rescission. The final paragraph of section 1691 specifically states: "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, *the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both*." (Italics added.) Moreover, section 1693 provides: "When relief based upon rescission is claimed in an action or proceeding, *such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party*. [¶] A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission *shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party*; but the court may make a tender of restoration a condition of its judgment." (Italics added.)

Chen's cross-complaint supplied adequate notice of rescission under sections 1691 and 1693, which recognize that the restoration of consideration may be delayed until judgment in the case in which rescission is sought. (See *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty. Co.* (2010) 50 Cal.4th 913, 928–929.) Tan did not establish that the delay in returning the album to her was "substantially prejudicial" under section 1693, in that she offered no evidence the album could have been put to another profitable use during the period that it was held by Chen. (See *Wilke v. Coinway* (1967) 257 Cal.App.2d 126, 140 [no unreasonable delay in restoration of consideration where delay not shown to be prejudicial].) To the contrary, Chen had already paid Tan $70,000, more than ten times the value of the album as determined by the court, using money from an equity line on her home for which she was presumably paying interest. If anyone had been substantially prejudiced by the arrangement, it would appear to be Chen.

Citing *Citicorp Real Estate, Inc. v. Smith* (9th Cir. 1998) 155 F.3d 1097, 1104, Tan argues she was prejudiced by Chen's delay in returning the album because she (Tan) incurred substantial expenses in bringing her civil suit and applying for a writ of

6

execution to recover the album. Tan's lawsuit sought the $50,000 balance allegedly due under the verbal agreement regarding the use of the album for a one-year period as well as punitive and other damages; consequently, it cannot be said that this action and the ensuing legal expenses would have been avoided if Chen had returned the album at an earlier date. Moreover, the trial court could have reasonably credited Chen's testimony to the effect that Tan gave her the album to keep and never sought its return until she filed her lawsuit in June 2010, and could have further concluded it was reasonable for Chen to retain the album to forestall third party claims until such time that the court ordered Chen to return it to Tan in May 2012.

Tan argues she should not have been required to return the $70,000 paid by Chen because she was not the ultimate recipient of that money. She suggests that her aunt, Tammy Tan, should have been joined as an indispensible party to Chen's cross-complaint under Code of Civil Procedure section 389[4] because Tammy was the person who actually received the $70,000 in the wire transfer sent by Chen and was responsible for delivering

[4] Code of Civil Procedure section 389 provides:

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; [and] (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder. . . ."

7

the money to Tan's grandmother in Taiwan.[5]  Tan did not raise this argument in the trial court and it is forfeited on appeal.  (*Jermstad v. McNelis* (1989) 210 Cal.App.3d 528, 538.)

Forfeiture aside, the absence of Tammy from this litigation does not require reversal of the judgment.  "Code of Civil Procedure section 389, subdivision (a), describes the circumstances under which the trial court may require a person to be joined as a party (necessary party).  Code of Civil Procedure section 389, subdivision (b), provides that a trial court, in the exercise of its discretion, may additionally find that a necessary party is also an indispensable party but cannot be joined as a party, and therefore 'in equity and good conscience' the action should be dismissed without prejudice. . . . [¶] . . . '. . . Courts must be careful to avoid converting a discretionary power or rule of fairness into an arbitrary and burdensome requirement that may thwart rather than further justice.  [Citation.]' "  (*Riverwatch v. Olivenhain Mun. Water Dist.* (2009) 170 Cal.App.4th 1186, 1216.)  Two factors—the court's ability to grant "complete relief" and the interests of the existing parties and the absentee—govern the determination of whether a party is "necessary" under Code of Civil Procedure section 389, subdivision (a), a prerequisite for concluding a party is "indispensable" under section 389, subdivision (b).  (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1100; *Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 792–793 (*Countrywide*).)

The absence of Tammy did not prevent the court from granting complete relief to Chen in connection with the rescission of her verbal agreement with Tan, because the court had the power to rescind the contract and order Tan to return the money paid by Chen.  "The 'complete relief' clause [of Code of Civil Procedure section 389] 'requires joinder [of the absentee] when nonjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties.* . . .  Simply put, 'the term complete relief

---

[5]  The trial court had previously determined that Tan's grandmother was not a necessary or indispensable party, based on Tan's allegation her grandmother had assigned her rights to Tan.

refers only "to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." ' " (*Countrywide*, *supra*, 69 Cal.App.4th at pp. 793–794.)

Turning to the second consideration under Code of Civil Procedure section 389, subdivision (a), this lawsuit did not jeopardize Tammy's rights as the absent party. The evidence showed the money was wired to Tammy in Taiwan so she could give it to Tan's grandmother. Tammy was not a party to the verbal agreement between Tan and Chen and had no claim on Chen's money. Nor will Tammy be liable in any future claim by Chen for return of the money, as Chen has been made whole by the judgment in this litigation. (See § 1692 [relief based on rescission "shall not include duplicate or inconsistent items of recovery"].) In short, Tammy was neither a necessary nor an indispensable party.

To the extent Tan is arguing she should not have been ordered to return the money because she was not its ultimate recipient, the claim is untenable. The evidence showed Tan attempted to enter into a verbal agreement with Chen for the lease or licensing of the album, and that Chen paid $70,000 for this privilege at Tan's direction. Indeed, Tan's lawsuit against Chen sought the balance allegedly due from Chen under the verbal agreement, and she cannot now distance herself from the transaction by pointing to her aunt and her grandmother as the intermediary for and ultimate recipient of the money. Section 1692 specifically provides: "A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled . . . the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." A court has broad powers to grant equitable relief under section 1692. (See *Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1389.) It did not exceed those powers in entering judgment against Tan for the amount paid by Chen under the rescinded agreement.

9

## DISPOSITION

The judgment is affirmed. Ordinary costs on appeal are awarded to respondent Chen.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

(A141615)