61 Cal.Rptr.3d 145 (2007)
152 Cal.App.4th 1
COUNTY OF IMPERIAL, Petitioner,
v.
The SUPERIOR COURT of Sacramento County, Respondent;
State Water Resources Control Board et al., Real Parties in Interest.
No. C048984.
Court of Appeal of California, Third District.
June 14, 2007.
*148 Ralph Cordova, Jr., Imperial County . Counsel, Joanne L. Yeager, El Centro; Rossmann and Moore, Antonio Rossmann, San Francisco, Roger B. Moore and David R. Owen for Petitioner.
Ralph Cordova, Jr., Imperial County Counsel, Joanne L. Yeager, El Centro; Jackson DeMarco & Peckenpaugh, Michael L. Tidus, Alene M. Taber and Kathryn M. Casey, Irvine, for Imperial County Air Pollution Control District as Amicus Curiae on behalf of Petitioner.
Kurt R. Wiese, District Counsel; Shute, Mihaly & Weinberger, Ellen J. Garber, San Francisco, and David Nawi for South Coast Air Quality Management District as Amicus Curiae on behalf of Petitioner.
Law Office of J. William Yeates, J. William Yeates, Sacramento, Mary U. Akens and Keith G. Wagner, Sacramento, for Planning and Conservation League, National Audubon Society and Defenders of Wildlife as Amici Curiae on behalf of Petitioner.
No appearance for Respondent.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary E. Hackenbracht, Senior Assistant Attorney General, Matthew Goldman, Deputy Attorney General, Peter von Haam, Deputy Attorney General and Clifford T. Lee, Deputy Attorney General, for Real Party in Interest State Water Resources Control Board.
Allen Matkins Leek Gamble & Mallory, David L. Osias, Robert R. Barnes, Jeffrey R. Patterson, Mark J. Hattam, San Diego; Horton, Knox, Carter & Foote and John Penn Carter, El Centro, for Real Party in Interest Imperial Irrigation District.
Hatch & Parent, Lisabeth D. Rothman, Susannah M. Mitchell, Los Angeles; and Daniel S. Hentschke, General Counsel, for Real Party in Interest San Diego County Water Authority.
Jeffrey Kightlinger, Adam C. Kear; and Linus Masouredis, Oakland, for Real Party in Interest The Metropolitan Water District of Southern California.
Redwine and Sherrill, Gerald D. Shoaf, Steven B. Abbott; Best, Best & Krieger, Michelle Ouellette and Megan K. Starr, Riverside, for Real Party in Interest Coachella Valley Water District.
RAYE, J.
As Mark Twain is said to have observed: "Whiskey is for drinking; water is for fighting over." California and water are inextricably linked in a battle royal waged over distribution of this precious resource among competing interests. No other resource is as vital to California's cities, agriculture, industry, and environment as this liquid gold. Predictably, no other resource generates such heated controversy as this commodity sometimes referred to as the "oil of the 21st century."
*149 Here, real parties in interest Imperial Irrigation District (Imperial) and San Diego County Water Authority (San Diego) sought to enter into an agreement to transfer 300,000 acre feet of water per year (afy) from Imperial to San Diego. Ultimately, the parties agreed to transfer 200,000 afy and conserve 100,000 afy for possible future acquisition by The Metropolitan Water District of Southern California (Metropolitan) and Coachella Valley Water District (Coachella).
Real party in interest State Water Resources Control Board (Board) approved the transfer. Petitioner County of Imperial (County) filed two separate mandamus petitions challenging various aspects of the Board's decision under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). The first petition named the Board as respondent and Imperial and San Diego as real parties in interest. The second petition named Imperial as respondent and San Diego as real party in interest. Neither petition named Metropolitan or Coachella.
Imperial demurred, arguing the County failed to name Metropolitan or Coachella, who were indispensable parties in both proceedings. The trial court sustained the demurrers with leave to amend. Subsequently, the County amended the petitions, naming Metropolitan and Coachella as interested parties. Metropolitan, Coachella, and San Diego filed joint demurrers, arguing Metropolitan and Coachella could not be added after the statute of limitations ran. The trial court sustained the demurrers without leave to amend, finding Metropolitan and Coachella Valley indispensable parties and finding the statute of limitations had run.
The County filed a petition for writ of mandate. We issued an alternative writ.[1] The County argues the trial court abused its discretion in dismissing the action after finding Metropolitan and Coachella indispensable parties. We find no abuse of trial court discretion and shall affirm the trial court's judgment sustaining the demurrers without leave to amend.

FACTUAL AND PROCEDURAL BACKGROUND
The County petitions for relief from orders in two separate, but connected, cases. In County of Imperial v. State Water Resources Control Board, Sacramento County Superior Court No. 03CS00082 (case No. 82), the County challenges the Board's approved permit application for a transfer of water from Imperial to San Diego. In County of Imperial v. Imperial Irrigation District, Sacramento County Superior Court No. 04CS00876 (case No. 876), the County posited various CEQA challenges to the underlying agreement between the transferring parties.
Although this litigation concerns numerous entities and has spawned a voluminous record, at its essence the petition rests upon the trial court's determination that Metropolitan and Coachella represented indispensable parties in case No. 82 and case No. 876. With this limited procedural question in mind, we review the factual and procedural background.

Imperial and Colorado River Water
Imperial is the largest single holder of water rights on the Colorado River in California. In 1914 California initiated the water rights permitting system currently administered by the Board. Imperial was formed in 1911 to bring Colorado River water to California's Imperial Valley. Each year, Imperial provides enough water to irrigate 500,000 acres in the Imperial *150 Valley. Imperial also delivers water to cities, schools, and businesses. (Imperial Irr. Dist. v. U.S. E.P.A. (9th Cir.1993) 4 F.3d 774, 774-775.)
Metropolitan and Coachella also possess water rights on the Colorado River under an agreement among all California water rights holders known as the Seven Party Agreement of 1931 (Seven Party Agreement). The Seven Party Agreement placed water rights holders in a priority system. Most of Imperial's water rights under this system take priority over most of Coachella's and over all of Metropolitan's. Based on its place in the priority system, Imperial is entitled to divert its full right to water before Metropolitan can divert any water at all. San Diego possesses no Colorado River water rights.
This priority system led to a conflict among Imperial, San Diego, Metropolitan, and Coachella. Imperial and San Diego contend Imperial may reduce its water use and designate another recipient to receive its unused water. In essence, Imperial may transfer excess water. Coachella and Metropolitan disagree and argue that under federal law, any water unused by Imperial is available to them under the priority system.
In the 1980s, the Board found some of Imperial's water use practices unreasonable and wasteful. The Board directed Imperial to increase water conservation. One suggested measure by which Imperial could increase conservation was to transfer conserved water to a willing purchaser in exchange for funding to support Imperial's conservation efforts.

Imperial and San Diego's Petition to the Board
In 1998 Imperial and San Diego executed an agreement under which San Diego would fund water conservation measures within Imperial's service area in exchange for Imperial's transfer of up to 300,000 afy to San Diego (transfer agreement). Imperial and San Diego jointly petitioned the Board to approve changes in the point of diversion and place of use in Imperial's water rights permit to allow an annual transfer on a long-term basis of up to 300,000 afy of Colorado River water from Imperial to San Diego for up to 75 years. The petition noted the agreement was ineffective until completion of environmental review, when the agencies would determine whether to go forward with the project.
The Legislature provides for Board approval of long-term transfers of water between water districts. (WatCode, §§ 1735-1737.) Water Code section 1735 states: "The board may consider a petition for a long-term transfer of water or water rights involving a change of point of diversion, place of use, or purpose of use. A long-term transfer shall be for any period in excess of one year."
A request for approval of a long-term water transfer must be filed by the holder of the water right, permit, or license. (Cal.Code Regs., tit. 23, § 811.) A request for a change in point of diversion, place of use, or purpose of use must be filed by the rights holder. (Wat.Code, § 1701.)
Water Code section 1736 provides that the Board may approve a petition for transfer: "The board, after providing notice and opportunity for a hearing, including, but not limited to, written notice to, and an opportunity for review and recommendation by, the Department of Fish and Game, may approve such a petition for a long-term transfer where the change would not result in a substantial injury to any legal user of water and would not unreasonably affect fish, wildlife, or other instream beneficial uses."
*151 The County protested the petition for approval of the transfer. The County argued the transfer would lead to detrimental third-party effects on the County's economy and environment. The County emphasized the impacts caused by the transfer's effects on the Salton Sea and the potentially severe air quality impacts associated with fallowing land and drying out the Salton Sea.

Metropolitan and Coachella Protest the Transfer
Metropolitan and Coachella protested the transfer petition, contending the transfer violated their priority rights under the Seven Party Agreement and the Board lacked jurisdiction because federal law preempted state regulation of Colorado River transfers. Metropolitan and Coachella indicated their objections could be resolved as part of a broader resolution of Colorado River issues.

Quantification Settlement Agreement
While the transfer petition was pending, negotiations began to reduce and redistribute California's use of Colorado River water in accordance with guidelines adopted by the Secretary of the Interior. These guidelines were designed to reduce California's Colorado River water usage from 5.2 million afy to 4.4 million afy, in accordance with rules established by the Supreme Court in Arizona v. California (1963) 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542.
The quantification settlement agreement (QSA) negotiations involved high-level discussions among Colorado River water agencies, federal and state officials, and stakeholders to resolve long-standing disputes about quantification of Colorado River water rights. The disputes included reasonable and beneficial use of river water, transfers and exchanges between water users, federal delivery of surplus water to California, and various environmental and socioeconomic impacts to the County from implementation of the proposed QSAs.
The transfer of water from agricultural to urban uses formed a key element of the plan. The transfer between Imperial and San Diego was the largest such transfer. These negotiations over the reduction of California's use of Colorado River water led to the negotiation of the QSA and the individual QSAs.

The Protest Dismissal Agreement
To resolve Coachella and Metropolitan's objections to the transfer agreement, Imperial, San Diego, Coachella, and Metropolitan entered into the Protest Dismissal Agreement (PDA).
The PDA amended the transfer petition to reduce the water transfer to San Diego from 300,000 afy to 200,000 afy, and to make the 100,000 afy difference available for acquisition by Metropolitan and Coachella. Drafts of the agreements for these transfers, along with a draft of the QSA, were submitted as exhibits in the Board proceeding.
The Board sent out a public notice that it would now consider approving not only the proposed water transfer from Imperial to San Diego, but also the proposed transfers from Imperial to Coachella and Metropolitan. The Board notice stated that despite the parties' not using the word "transfer" for the water going to Coachella and Metropolitan, the Board considered approval of an acquisition to be approval of a transfer. The Board served a copy of the notice on the County.[2]
Metropolitan and Coachella agreed to withdraw their protests and allow the *152 Board to hear and approve the transfer project, including the acquisition of water by Coachella and/or Metropolitan.[3] The parties agreed that any decision by the Board on the transfer project would be nonprecedential, and San Diego would not use the Board's decision to argue in another proceeding that Board approval was required to make water available to Coachella or Metropolitan. Mindful of federal preemption issues, all parties also agreed to urge the Board to include a statement that its decision "shall not establish the applicability or nonapplicability of California law or federal law to any of the matters raised by the Petition or any other Colorado River transfer or acquisition."
In comments before the Board at the time of the protest dismissal, Metropolitan argued the Board would not be considering approval of any action by Metropolitan or Coachella: "... Metropolitan reminds the State Board that no party is seeking approval of a `transfer' with respect to the possible conservation and acquisition by Metropolitan of up to 100,000 acre feet of water from [Imperial]."

Subsequent Proceedings
After withdrawing their protests before the Board, Metropolitan and Coachella ceased participating in the Board proceeding. Neither party submitted any briefing or exhibits, nor did either party participate in the Board's public hearing.
While the Board proceeding was pending, Imperial, as lead agency, prepared the draft and final environmental impact reports (DEIR and FEIR, respectively) for the water transfer from Imperial to San Diego. Imperial certified and submitted the DEIR and FEIR. Part of the DEIR project description includes the transfer of water by Imperial to San Diego, Coachella, and Metropolitan.
In an order adopted in October 2002 and amended in December 2002, the Board approved Imperial and San Diego's transfer petition. As requested by Imperial, the orders expressly clarified that the water districts were still to make the final decisions regarding all water transfers or acquisitions. The Board filed its notice of determination for approval of Imperial and San Diego's transfer petition. The Board relied on Imperial's transfer project FEIR.
However, on December 9, 2002, Imperial's board of directors declined to approve the proposed. QSA or adopt the transfer *153 project. Subsequently, the Board approved the QSA, but with conditions unacceptable to Metropolitan and Coachella. The agencies failed to meet the Department of Interior's deadline for QSA approval. In January 2003 none of the proposed QSA-related agreements, including the proposed agreements by which Metropolitan and Coachella would acquire water from Imperial, were finalized.
On January 21, 2003, the County filed its mandamus petition in case No. 82, naming the Board as respondent and Imperial and San Diego as real parties in interest. The petition challenged the Board's order approving the transfer. The County did not name Metropolitan or Coachella. Because of the absence of any final approval of the underlying transfer project, and by agreement of the parties, case No. 82 was stayed.
On October 2, 2003, Imperial approved the transfer project. On October 10, 2003, Imperial, Metropolitan, and Coachella signed the QSA and finalized the QSA-related agreements.
On November 6, 2003, the County filed case No. 876, challenging the transfer between Imperial and San Diego. Between January and April 2004, case No. 82 and case No. 876 were coordinated. The County filed first amended petitions in both cases. Imperial filed demurrers in both cases, arguing the County failed to name indispensable parties Metropolitan and Coachella.
The trial court sustained Imperial's demurrers in both cases on indispensable party grounds and granted leave to amend. Accordingly, the County amended its petitions, naming Metropolitan and Coachella as interested parties consistent with the court's order but stating it did not consider either entity a real party in interest.
Metropolitan, Coachella, and San Diego filed joint demurrers to the County's second amended petitions, arguing Metropolitan and Coachella could not be added after the statute of limitations had run. The County opposed the demurrers, arguing neither Metropolitan nor Coachella was indispensable in either case. In reply, Metropolitan and Coachella argued they were indispensable parties.
At oral argument, the County argued Metropolitan and Coachella were not indispensable parties; Metropolitan and Coachella responded that they had received an approval from the Board and were therefore indispensable. Imperial also urged that the two water districts were indispensable parties as recipients of a water transfer approved by the Board.
The trial court found Metropolitan and Coachella indispensable parties in case No. 82 and case No. 876. The court based its ruling on Public Resources Code section 21167.6.5 and Code of Civil Procedure section 389.[4] The court sustained the demurrers without leave to amend in both cases.
According to the trial court, the County failed to timely name Metropolitan and Coachella in its petitions. The unnamed parties were recipients of an approval under section 21167.6.5, requiring them to be named in the County's petition. In determining whether Metropolitan and Coachella qualified as indispensable parties, the court found Metropolitan and Coachella had interests divergent from those of the named parties that might be impaired by the underlying litigation. In addition, the court reasoned the County could protect its interests in the coordinated proceedings. *154 The court concluded the County failed to name indispensable parties Metropolitan and Coachella within the limitations period and sustained the demurrers without leave to amend. The County filed a timely petition for writ of mandate in this court.[5]

DISCUSSION

Standard of Review
The County challenges the trial court's order sustaining Metropolitan's, Coachella's, and San Diego's demurrers without leave to amend. We review the indispensable party question under Code of Civil Procedure section 389 for an abuse of discretion. (Deltakeeper v. Oakdale Irrigation Dist. (2001) 94 Cal.App.4th 1092, 1106, 115 Cal.Rptr.2d 244 (Deltakeeper).) We review de novo the interpretation of a statute. (Hill v. City of Clovis (2000) 80 Cal.App.4th 438, 446, 94 Cal.Rptr.2d 901.)

Necessary and Indispensable Parties
Code of Civil Procedure section 389 governs the joinder of parties and provides, in pertinent part: "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.
"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."
Subdivision (a) of section 389 defines the persons who ought to be joined if possible, often referred to as "necessary parties." A determination that a party is a necessary party is the predicate for the determination of whether the party is indispensable. Thus, subdivision (b) sets forth the factors the court should consider in determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable."
A court must consider fairness and equity in deciding whether a party is indispensable. A court has the power to proceed with a case even if indispensable parties are not joined. Courts must be careful to avoid converting a discretionary power or rule of fairness into an arbitrary *155 and burdensome requirement that may thwart rather than further justice. (People ex rel. Lungren v. Community Redevelopment Agency (1997) 56 Cal.App.4th 868, 876, 65 Cal.Rptr.2d 786.) In the CEQA context, "[t]he public has a right to insist on the adequacy of the environmental document upon which the agency makes its decision," and courts should avoid thwarting this purpose through the harsh application of indispensable party rules. (Deltakeeper, supra, 94 Cal.App.4th at p. 1109,115 Cal.Rptr.2d 244.)

Deltakeeper
The County asserts the facts before us harken back to our previous decision in Deltakeeper. Real parties in interest distinguish Deltakeeper. The trial court found Deltakeeper had been legislatively disapproved and was no longer controlling. Given the cacophony over our previous decision, we examine Deltakeeper in some detail.
In Deltakeeper, named defendants, three irrigation districts (Oakdale, South San Joaquin, and Stockton East) entered into a joint district water purchase agreement (Agreement) together with the City of Stockton (City) and three water districts (Lincoln Village, Colonial Heights, and Central San Joaquin) for the sale of water by Oakdale and South San Joaquin to the other parties to the Agreement. As the lead agencies, Oakdale and South San Joaquin prepared an environmental impact report (EIR) for the project. (Deltakeeper, supra, 94 Cal.App.4th at p. 1095, 115 Cal. Rptr.2d 244.)
Plaintiffs, a group of environmental and recreational groups, challenged the EIR by a petition for writ of mandate against Oakdale, South San Joaquin, and Stockton East. The trial court dismissed the petition for failure to join City, Lincoln Village, and Colonial Heights as indispensable parties. We reversed. (Deltakeeper, supra, 94 Cal. App.4th at pp. 1095-1096, 115 Cal.Rptr.2d 244.)
The Agreement states that the water districts seek to transfer water to City and three irrigation districts. The purchasers are required to pay for the water whether or not they use it. The obligation of the water districts to deliver water, and the concomitant obligation of the purchasers to pay for water, is conditioned upon the adoption of an EIR. (Deltakeeper, supra, 94 Cal.App.4th at pp. 1096-1097, 115 Cal. Rptr.2d 244.)
Under the Agreement, City and two irrigation districts designate Stockton East to carry out their obligations, including paying for, receiving, treating, transporting, and distributing the water. However, each party is obligated to defend its own interests in litigation or regulatory action, including CEQA compliance, involving the Agreement. (Deltakeeper, supra, 94 Cal. App.4th at p. 1097, 115 Cal.Rptr.2d 244.)
In addition to this litigation clause, City, Lincoln Village, Colonial Heights, and Stockton East entered into a separate agreement (the Stockton Agreement) that provides for the joint control of litigation. Under the Stockton Agreement, Stockton East will make litigation decisions after conferring with the other parties. The Stockton Agreement binds Stockton East to a collective litigation decision arrived at by a vote by all parties. (Deltakeeper, supra, 94 Cal.App.4th at pp. 1097-1098, 115 Cal.Rptr.2d 244.)
Plaintiffs brought a writ of mandate action naming Oakdale and South San Joaquin as respondents and Stockton East as real party in interest and challenging the adequacy of the EIR. The trial court granted the defendants' motion to dismiss for failure to join City, Lincoln Village, and Colonial Heights as necessary and indispensable *156 parties within the limitations period. (Deltakeeper, supra, 94 Cal.App.4th at pp. 1098-1099, 115 Cal.Rptr.2d 244.)
On appeal, we considered whether City, Lincoln Village, and Colonial Heights were necessary parties under Code of Civil Procedure section 389, subdivision (a). We found there was no risk of partial relief to the named parties in the absence of the unnamed parties. Resolution of the adequacy of the EIR would provide the named parties with complete relief. (Deltakeeper, supra, 94 Cal.App.4th at p. 1101, 115 Cal. Rptr.2d 244.) We noted the central issue was the adequacy of the EIR and found: "Plaintiffs timely named as defendants three parties to the Agreement, all of whom have a strong interest in upholding the EIR so as to obtain the benefits of the Agreement. A party's ability to protect its interest is not impaired or impeded as a practical matter where a joined party has the same interest in the litigation." (Id. at p. 1102,115 Cal.Rptr.2d 244.)
We also noted that under the separate Stockton Agreement, City, Lincoln Village, and Colonial Heights had a vote in control of the litigation, bestowing on them the right to participate in and control the CEQA litigation. In addition, the nonjoined parties did not dispute that their interests in the CEQA litigation could be adequately represented by the defendants. (Deltakeeper, supra, 94 Cal.App.4th at p. 1103,115 Cal.Rptr.2d 244.)
The unnamed parties claimed they were materially interested in the litigation because of the practical effect the CEQA litigation would have on them as parties to the water transfer agreement. We agreed, finding the unnamed parties had a contractual interest that would be injuriously affected by a judgment declaring the EIR to be inadequate. We proceeded on the assumption that the unnamed parties were necessary parties. (Deltakeeper, supra, 94 Cal.App.4th at p. 1105, 115 Cal. Rptr.2d 244.)
We then considered whether the unnamed parties were indispensable parties under Code of Civil Procedure section 389, subdivision (b). As to what extent a judgment rendered in the parties' absence might be prejudicial, we found the nonjoined parties had interests in the litigation, but those interests were adequately protected by the named parties to the action. (Deltakeeper, supra, 94 Cal. App.4th at p. 1107, 115 Cal.Rptr.2d 244.)
In assessing whether there were measures by which prejudice could be lessened or avoided, we considered what contribution the nonjoined parties could make to the proceeding before the trial court. We found a proceeding to challenge an EIR is unlike a trial of a typical contract action in which a party may present evidence favorable to its position. At an EIR hearing, the parties are limited to the issue of whether substantial evidence supports the lead agency's determination that the EIR is adequate. No new evidence may be presented. This limited any participation by the unnamed parties, since their arguments regarding the sufficiency of the evidence necessarily would be based on the same evidence addressed by the joined parties. (Deltakeeper, supra, 94 Cal. App.4th at pp. 1107-1108, 115 Cal.Rptr.2d 244.)
As to whether the judgment rendered would be adequate, we determined that any judgment rendered would adequately adjudicate the rights of the parties before the court. The only question before the trial court was whether the EIR was adequate. (Deltakeeper, supra, 94 Cal. App.4th at p. 1108, 115 Cal.Rptr.2d 244.)
Finally, we found the plaintiffs would have no adequate remedy if the trial court dismissed the action, since they would *157 have no recourse as the statute of limitations had run for joining more parties. (Deltakeeper, supra, 94 Cal.App.4th at p. 1108, 115 Cal.Rptr.2d 244.) We considered the underlying policy of the CEQA legislation: to inform both decision makers and the public of the environmental consequences of a proposed project. We concluded that were we to find City, Lincoln Village, and Colonial Heights to be indispensable parties, the adequacy of the EIR would escape judicial scrutiny. Ultimately, "[s]uch a harsh result is unnecessary where other parties have a unity of interest in the CEQA litigation." (Deltakeeper, at p. 1109, 115 Cal.Rptr.2d 244.) We determined we could not, in equity and good conscience, find the action should be dismissed. (Ibid.)

Section 21167.6.5
Shortly after we decided Deltakeeper, the Legislature enacted section 21167.6.5, which requires approval recipients to be named in CEQA litigation and states, in its entirety:
"(a) The petitioner or plaintiff shall name, as a real party in interest, any recipient of an approval that is the subject of an action or proceeding brought pursuant to Section 21167, 21168, or 21168.5, and shall serve the petition or complaint on that real party in interest, by personal service, mail facsimile, or any other method permitted by law, not later than 20 business days following service of the petition or complaint on the public agency.
"(b) The public agency shall provide the petitioner or plaintiff, not later than 10 business days following service of the petition or complaint on the public agency, with a list of responsible agencies and any public agency having jurisdiction over a natural resource affected by the project.
"(c) The petitioner or plaintiff shall provide the responsible agencies, and any public agency having jurisdiction over a natural resource affected by the project, with notice of the action or proceeding within 15 days of receipt of the list described in subdivision (b).
"(d) Failure to name potential parties, other than those real parties in interest described in subdivision (a), is not grounds for dismissal pursuant to Section 389 of the Code of Civil Procedure.
"(e) Nothing in this section is intended to affect an existing right of a party to intervene in the action." (Italics added.)

The Trial Court's Decision
The trial court considered Deltakeeper and determined that, although the situation was similar, the case was no longer controlling after the adoption of section 21167.6.5 in 2002. Rather, "[t]he legislative history and intent indicates a reaction against Deltakeeper and a desire to 'strengthen the indispensability rule' by requiring that water transfer recipients be involved in proceedings contesting the transfer."
Noting that water will flow to Metropolitan and Coachella only under Imperial's contracts with the entities, the court found the Board's decision placed Metropolitan and Coachella within the class of transferees that the Legislature sought to protect as "recipients of approval" in section 21167.6.5, subdivision (a).
Public Resources Code section 21167.6.5 does not indicate the consequences of a failure to name "recipients of approval." Nonetheless, the court concluded dismissal was possible if the unnamed parties were found to be indispensable under Code of Civil Procedure section 389, subdivision (b). Applying section 389, subdivision (b), the court found a judgment against the Board would have detrimental consequences for the absent entities because *158 they would potentially lose 100,000 afy intended for them. This 100,000 afy would serve at least 200,000 households. In addition, Metropolitan and Coachella could face the secondary impact of Colorado River diversions if annulment of the Board's decision led to the unraveling of the QSA approach to bringing California within its Colorado River compliance.
According to the court, the named parties did not have the same interests as the unnamed parties. The court explained its position by simply laying out the differing functions of the players: Imperial is an agricultural water supplier; San Diego is an urban water retailer. In contrast, Metropolitan is an urban water wholesaler and Coachella is an agricultural water user.
Finally, the court noted that the case management plan in the coordinated proceeding permitted all parties to brief all issues. Thus, the county entities would have the ability to assert their interests in the coordinated proceeding. After weighing the Code of Civil Procedure section 389, subdivision (b) criteria, the court concluded that dismissal of the County's petition was appropriate.

Deltakeeper and Section 21167.6.5
The parties express passionate and disparate views about the trial court's assessment of the continued viability of Deltakeeper in light of section 21167.6.5. Their arguments obscure the holding of Deltakeeper, which simply requires recipients of approval to be named, thereby making them necessary parties as a matter of law, but leaves to the trial court the task of determining whether the recipient is an indispensable party.
In Deltakeeper, we first found the unnamed parties to be necessary and then performed the analysis under Code of Civil Procedure section 389, subdivision (b) to determine whether they were indispensable, requiring dismissal of the action. In both cases the outcome rested on an application of the factors enumerated in section 389, subdivision (b) to the facts in each case.
Therefore, we begin by considering whether, under Public Resources Code section 21167.6.5, Coachella and Metropolitan were recipients of approval. If we find the unnamed parties received approvals, we then consider whether under Code of Civil Procedure section 389, subdivision (b) Metropolitan and Coachella qualify as indispensable parties, requiring dismissal of the action.
Conversely, if we find Metropolitan and Coachella were not recipients of approval; we must still consider whether they are necessary parties under Code of Civil Procedure section 389, subdivision (a). If so, we then apply the criteria of section 389, subdivision (b) to determine whether Metropolitan and Coachella qualify as indispensable parties, requiring dismissal of the action.
This approach differs from the position taken by Coachella, which argues that section 21167.6.5 mandates dismissal. Coachella insists that "[b]ecause the legislative history refers to the persons in section 21167.6.5(a) as Indispensable parties,' the Legislature already has done the equitable balancing that otherwise might be done by a court under Code of Civil Procedure section 389, and has made a blanket determination that the failure to name `recipients of an approval' requires dismissal."
In addition, Coachella argues that the structure and purpose of Public Resources Code section 21167.6.5 supports mandatory dismissal. Section 21167.6.5, subdivision (d) provides that failure to name potential parties, other than those described in subdivision (a), is not grounds for dismissal pursuant to section 389 of the Code of Civil *159 Procedure. Therefore, Coachella reasons, failure to name parties described in section 389, subdivision (a), recipients of approval, is grounds for dismissal.
Finally, Coachella contends one of the purposes of the statute was to streamline the adjudication of CEQA cases. As Coachella reasons: "`Streamlining' suggests replacing equitable balancing on a case-by-case basis with a simple bright-line and general joinder rule, i.e., `recipients of an approval' must be named under subdivision (a) or the case will be dismissed under subdivision (d)."
We are not persuaded. Coachella fails to provide a citation to the legislative history on which it purports to rely. In any event, the purported legislative history does not lead us to conclude that the Legislature has already performed the equitable balancing required under Code of Civil Procedure section 389 and determined that dismissal is always mandated when a recipient of an approval is not named.
Nor does the language of Public Resources Code section 21167.6.5, subdivision (d) forestall the application of Code of Civil Procedure section 389. Section 21167.6.5, subdivision (d) states that failure to name potential parties, except recipients of approval, is not grounds for dismissal pursuant to section 389. It does not state, or imply, that failure to name recipients of approval mandates dismissal. Instead, section 21167.6.5, subdivision (d) applies only to parties that do not qualify as recipients of approval under section 21167.6.5, subdivision (a). Subdivision (d) of section 21167.6.5 excludes these nonrecipients from dismissal under section 389. Subdivision (d) of section 21167.6.5 is silent as to the applicability of section 389 to recipients of approval.
Therefore, Code of Civil Procedure section 389, subdivision (b) is invoked when a recipient of approval is not named; the factors enumerated in the subdivision must then be weighed to determine whether dismissal is warranted. Finally, the mere mention of streamlining as a goal does not lead to the conclusion that Public Resources Code section 21167.6.5, subdivision (d) creates a "bright-line" joinder rule, automatically dispensing with section 389, subdivision (b).

Recipients of Approval
In finding that Metropolitan and Coachella were "within the class of transferees that the legislature was seeking to protect as `recipients of approval' in section 21167.6.5(a)," the trial court understood that the two districts had not sought the Board's approval for the water transfer. Indeed, Metropolitan and Coachella had opposed Imperial's petition to transfer water to San Diego. They retracted their opposition following execution of the PDA under which 100,000 afy was made available for their acquisition. However, the districts insisted that Board approval was unnecessary for Imperial to reserve 100,000 afy for a later transfer to them and thereafter withdrew from the proceeding. Nonetheless, the court noted that under the Board's action, Imperial's permit was modified to expand the place of use to include the Metropolitan and Coachella service areas, and "this water will flow to these areas only under the [Imperial] contracts with these entities."[6]
*160 Much of the County's disagreement with the trial court's interpretation stems from Coachella and Metropolitan's prior assertion that no Board approval was required. According to the County, "[o]nly by egregiously reversing position during respondent Court's proceedings, and abrogating their contractual duty to deny that [Metropolitan] and [Coachella] were approval recipients, did the water district's [sic] induce respondent Court's conclusion that [Coachella] and [Metropolitan] had received approvals."
However, any analysis of whether a party is a "recipient of an approval" under the statute rests not with the party's self-labeling or litigation arguments, but with the words of the statute itself. Regardless of Coachella and Metropolitan's federal preemption arguments that led them to dispute the necessity of Board approval for the transfer, we look to their status in the underlying transaction, focusing on the Board's order and the statute's language regarding approval recipients as applied within the larger statutory scheme regulating water transfers.
The County takes the position that neither Metropolitan nor Coachella qualify as "recipients of approval" under the statute's language. According to the County, an approval necessarily authorizes its recipient to do something. The Board's order only authorizes the Imperial and San Diego transfer; it stops short of approving any similar transfer to Metropolitan and Coachella. Instead, it gives Imperial permission to engage in water conservation from which the water districts could potentially benefit. The County concludes: "While [the order] clearly does approve the proposed [Imperial-San Diego] transfer, and also approves [Imperial's] ability to conserve and make available water, the order stops short of approving any similar transfer to [Metropolitan] and [Coachella]. Instead, it gives [Imperial], and [Imperial] alone, a permissive approval to make changes under [Imperial's] permit. [Citation.] The purpose of that change obviously was to allow [Imperial], if it chose, to enter into water acquisition deals [citation], but nowhere does the [Board] order purport to actually approve those deals, to give [Metropolitan] and [Coachella] any approval for steps they might take to prepare for entering those deals, or to compel [Imperial] to provide [Metropolitan] or [Coachella] with any water. The content of the order thus was directed at [Imperial] and [San Diego] alone." (Fn.omitted.)
The County's argument misconstrues the law surrounding water transfers. Water Code sections 1735 through 1737 govern Board approvals of long-term water transfers. Water Code section 1736 authorizes the Board, after notice and an opportunity to be heard, to approve a petition for a long-term transfer of water after certain conditions are met. Here, the Imperial-San Diego petition for a long-term transfer was specifically amended to transfer 100,000 afy to Coachella and/or Metropolitan instead of San Diego. This was the petition approved by the Board.
As Imperial points out, this was the entirety of approval the Board could give. There was no further Board approval needed under state law to effectuate the transfers to Metropolitan and Coachella. Only through Board approval can any of the transferees receive water under Imperial's state water right permit and priority. Under the long-term transfer statutes, Water Code sections 1735 through 1737, Imperial could and did petition for a change as to the point of diversion, place of use, and purpose of use to effectuate the transfer to San Diego, Metropolitan, and Coachella. Without this Board approval, the other water districts would not be *161 authorized users of water under Imperial's water right permit.
The Board's order authorizes a new point of diversion, for San Diego and Metropolitan, and expands authorized places and purposes of use to include the areas and uses of San Diego, Coachella, and Metropolitan. The Board's order states it is being asked to approve changes that would authorize a transfer of water to Coachella and Metropolitan under Imperial's permit. The Board also determined that delivery of Imperial's conserved water to Coachella and Metropolitan was a transfer.
The Board's order unambiguously approves the future transfer of 100,000 afy of water to Metropolitan and Coachella. Therefore, we agree with the trial court's assessment that Metropolitan and Coachella are recipients of approval under section 21167.6.5.
The County also labels Metropolitan and Coachella's change in position regarding the Board's authority to approve the transaction "a stunning reversal" meriting estoppel. According to the County, Metropolitan and Coachella stated they would not request Board approval or argue that approval was necessary for the transfer. They induced the County to rely on this representation and then promptly reversed course, arguing they had indeed received approvals. This, the County argues, is a case for judicial estoppel.
Courts apply judicial estoppel when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position; (4) the two positions are completely inconsistent; and
(5) the first position was not taken as a result of ignorance, fraud, or mistake. (Hanna v. Los Angeles County Sheriffs Dept. (2002) 102 Cal.App.4th 887, 896, 125 Cal.Rptr.2d 686.)
Although Metropolitan and Coachella disputed the need for Board approval of the transfer, neither party made any representations concerning the applicability of section 21167.6.5. Neither did either party state that the Board's order did not constitute an approval of the transfers under Imperial's permit. We find no prior inconsistent statement inducing reliance giving rise to a judicial estoppel.

Indispensable Parties
Since we find Metropolitan and Coachella recipients of approval, we must next determine whether the trial court correctly concluded they were also indispensable parties under Code of Civil Procedure section 389, subdivision (b).[7] In determining whether a party is indispensable, we consider the four factors listed in the statute. The standard of review of a trial court's determination pursuant to section 389, subdivision (b) is abuse of discretion. The subdivision (b) factors are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another. (County of San Joaquin v. State Water Resources Control Bd. (1997) 54 Cal.App.4th 1144, 1149, 1153, 63 Cal.Rptr.2d 277 (County of San Joaquin).)
Accordingly, we review for an abuse of discretion the trial court's determination that Coachella and Metropolitan are indispensable parties. The County, at least implicitly, acknowledges that the trial court evaluated the Code of Civil Procedure *162 section 389, subdivision (b) factors. However, the County, in its petition, asks us to reweigh these discretionary factors to reach a contrary result.
The County analyzes each factor to present a scenario in which the discretionary factors could be balanced to permit its petition to proceed, but the County has failed to demonstrate why these factors must be balanced in this manner. In other words, our review of the County's petition reveals it fails to show the trial court abused its discretion in interpreting the factors under Code of Civil Procedure section 389, subdivision (b) to find the petition could not proceed absent Coachella and Metropolitan. We address the relevant factors.

Prejudicial Judgment
We first consider "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties." (Code Civ. Proc., § 389, subd. (b), factor (1).) The trial court found a judgment against Imperial would prejudice Metropolitan and Coachella because "they would potentially loose [sic] 100,000 acre-feet per year of water intended for them  water sufficient to serve at least 200,000 households. They could also face the secondary impacts of more immediate reduced Colorado River diversions if the nullification of the [Board's] decision led to an unraveling of the QSA approach to achieving a `soft-landing' in bringing California within its Colorado River compliance."
The County responds that Metropolitan and Coachella "disavowed any interest, other than that shared by virtually all southern California water users, in the challenged order when this case was filed, and any interests present were adequately represented by the existing parties." The County's response overlooks the language of Code of Civil Procedure section 389, subdivision (b), factor (1), which considers the prejudicial impact of a judgment on an unnamed party. Here, the trial court correctly articulated the possible prejudice: the loss of 100,000 afy under the transfer agreement and the potential unraveling of the QSA and the PDA.
The County also argues the court improperly based its indispensable party determination on circumstances that did not exist until months after the statute of limitations ran. According to the County, when it filed suit the agreements referenced in the Board's order had not been finalized. Instead, the Imperial directors declined to approve the QSA, casting the future of the individual agreements into doubt. According to the County: "Thus, no party had a legal commitment to perform, or a legal right to require others to perform, under any of the agreements, and it was highly uncertain whether anyone would ever have such a right, or what form the ultimate agreements would take." Therefore, the trial court inappropriately punished the County by basing its indispensable party determination on circumstances not in existence when it filed its suit.
Metropolitan and Coachella point out that Code of Civil Procedure section 389 references the "interests" of the unnamed party, not vested contract or property rights. We agree.
"Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party." (Sierra Club, Inc. v. California Coastal Com. (1979) 95 Cal.App.3d 495, 501, 157 Cal. Rptr. 190.) California courts do not require that a party have a vested contractual or property right at stake in order to be *163 found an indispensable party. (Save Our Bay, Inc. v. San Diego Unified Port Dist. (1996) 42 Cal.App.4th 686, 696, 49 Cal. Rptr.2d 847 (Save Our Bay); Beresford Neighborhood Assn. v. City of San Mateo (1989) 207 Cal.App.3d 1180, 1189, 255 Cal. Rptr. 434.) The County's argument that the trial court based its finding of indispensability on circumstances not yet in existence, since the agreements were not yet final, is only another way of arguing that Metropolitan and Coachella did not have vested contract rights at stake when the County filed suit.
In addition, the trial court is not limited to considering only the circumstances in existence at the time the suit is filed. Indispensability is determined by considering the status of the parties at the time relief is to be entered, or at the time the issue of indispensability is raised, rather than to their status at the time the suit is filed. (Kraus v. Willow Park Public Golf Course (1977) 73 Cal.App.3d 354, 368, 140 Cal.Rptr. 744; Union Carbide Corp. v. Superior Court (1984) 36 Cal.3d 15, 22, 201 Cal.Rptr. 580, 679 P.2d 14.)
Here, even before the County filed its suit, it had notice that under the proposed QSA and PDA both Coachella and Metropolitan were potential recipients of 100,000 afy of Imperial's Colorado River water. The Board's public notice also referenced the transfer. While the QSA and PDA were not yet in their final forms, the proposed terms clearly and unequivocally contemplated diversion of Imperial water to Metropolitan and Coachella. The trial court appropriately considered Metropolitan's and Coachella's interests under the agreements in determining the issue of indispensability.[8]

Lessening of Prejudice
Under Code of Civil Procedure section 389, subdivision (b), factor (2) the court considers whether protective provisions in the judgment can ameliorate or eradicate prejudice to the unnamed parties. The trial court's decision does not address this factor.
Nor does the County offer any guidance. The County labels the effort of lessening prejudice "difficult" and argues that since no prejudice will result to Metropolitan or Coachella, no measures to avoid prejudice are necessary. However, since the trial court found potential prejudice, the County's silence as to any fashioning of relief to avoid prejudice supports the trial court's finding of indispensability.

Adequacy of Judgment
Under factor (3) of Code of Civil Procedure section 389, subdivision (b) the court considers whether a judgment entered in the absence of Metropolitan and Coachella will be adequate. The trial court noted the variety of interests represented by the parties and found them divergent, preventing an adequate judgment for the absent parties. The court noted Imperial is an agricultural water supplier; San Diego is an urban water retailer. In contrast, Metropolitan is an urban water wholesaler; Coachella is predominately an agricultural water user.
The County discounts any inadequacy: "Their absence will not deprive respondent Court of the ability to hear any of the matters raised by the County, will not foreclose any of the County's requested remedies, and will not create any risk of inconsistent obligations for [Imperial] and [San Diego]."
*164 The test for determining the ability to protect an absent party's interest is whether existing and absent parties' interests are sufficiently aligned that the absent party's rights necessarily will not be affected or impaired by the judgment or proceeding. (Save Our Bay, supra, 42 Cal.App.4th at pp. 697-698, 49 Cal.Rptr.2d 847.) The County argues that the parties' oppositions to its petition reflect a unity of purpose in obtaining the same goal and provide "clear indication of their loyalty to each other and to the lack of any current divergence of interests."
However, as Coachella points out, a common litigation objective is not enough to establish adequacy of representation by the named parties. Since predicting how named parties would conduct litigation requires clairvoyance beyond the trial court's expertise, courts instead consider the interests of both the named and unnamed parties. In Deltakeeper we found the named parties could adequately protect the interests of the unnamed parties. However, in Deltakeeper we based this finding in part on the existence of the joint litigation agreement. Under the agreement, the nonjoined parties had the right to participate in and control the CEQA litigation through collective decisions binding on the named party. (Deltakeeper, supra, 94 Cal.App.4th at p. 1103, 115 Cal. Rptr.2d 244.) In addition, in Deltakeeper the unnamed parties did not dispute that the named parties could adequately represent their interests. (Ibid.)
Metropolitan and Coachella do not have the benefit of a joint litigation agreement. In addition, they vociferously argue that the disparate interests of Imperial, San Diego, and the Board prevent the named parties from representing their interests.
San Diego argues that neither it nor Imperial can adequately represent the interests of Coachella or Metropolitan because they are not in agreement on important issues. San Diego points out that water agencies have no responsibility to address other agencies' water supply issues or needs. In addition, if the County is successful in its quest for additional mitigation, San Diego and Imperial would have an interest in seeing any such mitigation assigned to the 100,000 afy destined for Metropolitan and Coachella instead of San Diego's 200,000 afy.
The differing and possibly conflicting interests of the named and unnamed parties support the trial court's determination that Metropolitan and Coachella were indispensable parties.

Availability of Alternative Remedy
Finally, the court considers whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder. (Code of Civil Procedure, § 389, subd. (b), factor (4).) Here, the trial court found the County would have the ability to assert its interests in the coordinated proceedings. The court stated: "Case No. 03CS00083 remains pending before the Court, and the Court has announced in its case management plan that all parties to all coordinated cases will be allowed to brief all issues, if they desire."
The County argues the opportunity to submit briefs in another party's case provides no substitute. According to the County: "That case could settle, and of course the County would have no opportunity to appeal an adverse judgment. As the County's CEQA claims were more expansive than those asserted in other mandamus actions, it cannot assume respondent Court would allow it to brief issues not otherwise raised. The County should not be relegated to the status of cheerleader *165 in someone else's game, when the County has the most at stake."
We rejected a similar argument in County of San Joaquin, supra, 54 Cal. App.4th 1144, 63 Cal.Rptr.2d 277. There the plaintiff water users failed to name the United States Bureau of Reclamation in an action challenging restrictions imposed under new federal standards for water quality. The trial court found a pending federal action, which involved some of the same issues, provided an adequate remedy. (Id. at p. 1150, 63 Cal.Rptr.2d 277.)
On appeal, the plaintiffs argued they lacked an alternative forum because they could not bring precisely the same claims in federal court. (County of San Joaquin, supra, 54 Cal.App.4th at pp. 1154-1155, fn. 7, 63 Cal.Rptr.2d 277.) We noted: "This is not the standard. As the trial court's ruling acknowledges, appellants cannot bring all of the same claims in the federal case. However, the standard is whether appellants have an `adequate remedy,' not whether all issues are identical." (Ibid.) We found the federal case sought the same general type of relief sought in the instant case. (Ibid.) We affirmed the trial court's dismissal of the action based on failure to name an indispensable party. (Id. at p. 1157, 63 Cal.Rptr.2d 277.)
In addition to participating in other CEQA challenges to the EIR, the County has also answered Imperial's validation action, providing the County an alternative means for asserting its CEQA claims against the project. The County has asserted Imperial's failure to comply with CEQA as a defense to Imperial's pending validation action. The County claims the validation action provides a poor alternative, since validation cases "often become extraordinarily complex and time-consuming affairs."
The County's complaints regarding delay in the validation action may be valid, but they do not provide a basis for finding that the trial court abused its discretion in finding an adequate remedy if the County is dismissed. This case differs markedly from the situation we encountered in Deltakeeper, where dismissal of the action would have deprived the plaintiffs of any remedy.
In Deltakeeper, the adequacy of the EIR would have escaped any judicial scrutiny, and we reasoned such a harsh result was unnecessary when the unnamed parties shared a unity of interest in the CEQA litigation. (Deltakeeper, supra, 94 Cal.App.4th at p. 1109, 115 Cal.Rptr.2d 244.) Here, in contrast, no such unity of interest exists among the parties, and the County can mount a CEQA challenge in the coordinated case and in its opposition to Imperial's validation action. Under these circumstances, and based on the record before us, we cannot find the trial court abused its discretion in applying the Code of Civil Procedure, section 389, subdivision (b) factors and dismissing the action.

Equity
The County argues that dismissal of case No. 876 and case No. 82 is fundamentally inequitable, since it will deprive the County of "the opportunity to prosecute its case against environmental review of and mitigation for the agreement to implement the largest water transfer in American history, simply because it reasonably named only the contracting parties." We acknowledge that section 389 of the Code of Civil Procedure should not be converted from a rule of fairness into an arbitrary and burdensome requirement that may thwart rather than accomplish justice. (Deltakeeper, supra, 94 Cal.App.4th at p. 1109, 115 Cal.Rptr.2d 244.)
*166 However, here the unnamed parties cannot be adequately represented by the named parties, and the County has other forums in which to challenge the adequacy of the EIR. Section 389, subdivision (b) requires a balancing of equities to determine whether the action should proceed in the absence of necessary parties. The trial court carefully balanced the various factors and determined, on balance, that equity was best served by dismissing the action for failure to name Coachella and Metropolitan. Such a determination is never easy, but we find the trial court's application of the factors both fair and well within its discretion.
DISPOSITION
The petition for a writ of mandate is denied. The parties shall bear their own costs in this original proceeding.
We concur: NICHOLSON, Acting P.J., and ROBIE, J.
NOTES
[1] Petitioner's request for calendar preference is dismissed as moot.
[2] The Board's revised notice states, in part: "Petitioners stressed that they do not consider the proposed acquisition of water by [Coachella] and [Metropolitan] to be a transfer. Petitioners have requested, however, a change in [Imperial's] Permit 7643 that would authorize the transfer of water to [Coachella] and [Metropolitan] under [Imperial's] permit. Accordingly, this notice uses the word `transfer' to describe the amendment to the petition."
[3] The PDA states: "The parties will urge the [Board] to schedule a hearing on the Petition as soon as all pertinent environmental review documents have been released for public comment. The scope of the hearing ... should encompass the conservation of up to 300,000 afy of Colorado River water, the transfer of up to 200,000 afy of conserved water to [San Diego] and the acquisition of an additional 100,000 afy of conserved water by [Coachella] and [Metropolitan], and the corresponding changes in point of diversion, place of use, and purpose of use to be made to [Imperial] Permit 7643 .... Notwithstanding the continuing disagreement among the Parties about the jurisdiction of the [Board] over these issues ... pursuant to the settlement agreement among the Parties, [Coachella] and [Metropolitan] agree that a [Board] hearing should take place to consider the conserved water transfer to [San Diego] and the conserved water acquisition by [Coachella], and the conserved water acquisition by [Metropolitan]...."
[4] All further statutory references are to the Public Resources Code unless otherwise indicated.
[5] The requests for judicial notice filed by Imperial, Coachella, and the Board are granted.
[6] The Board's order states: "It is hereby ordered: [] Imperial Irrigation District's (permittee) and San Diego County Water Authority's (SDCWA) petition to transfer conserved water from permittee to SDCWA and to change the point of diversion, place of use, and purpose of use under Permit No. 7643 is approved." This order is expressly conditioned on compliance by Imperial, as the permittee, with the listed conditions of approval.
[7] The County presents fundamentally identical arguments under both case No. 82 and case No. 876.
[8] We also reject the County's argument that Metropolitan and Coachella possessed "just a consequential interest," not the requisite legally protected interest necessary for indispensable status.