Filed 6/12/13  Imperial Cty. Air Pollution Cont. Dist. v. State Water Res. Cont. Bd. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| IMPERIAL COUNTY AIR POLLUTION CONTROL DISTRICT, | C059264 |
| Plaintiff and Appellant, | (Super. Ct. Nos. 03CS00083, JCCP4353) |
| v. | |
| STATE WATER RESOURCES CONTROL BOARD, | |
| Defendant and Respondent; | |
| IMPERIAL IRRIGATION DISTRICT et al., | |
| Real Parties in Interest. | |

As John Huston's character in the film Chinatown (Paramount Pictures 1974) observed:  "Either you bring the water to L.A. or you bring L.A. to the water."  Water means growth; growth necessitates access to water.  The pull between this thirst for water and its limited supply has resulted in a tsunami of litigation over the distribution of this precious resource among competing interests.  This is our second foray into a deep well of litigation between various entities over water, the commodity sometimes referred to as the "oil of the 21st century."[1]

---

[1] Many of the facts herein are taken from the facts in our earlier opinion in *County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13 (*County of Imperial*).

1

Real parties in interest Imperial Irrigation District (Imperial) and San Diego County Water Authority (San Diego) sought to enter into an agreement to transfer 300,000 acre feet of water per year (afy) from Imperial to San Diego. Ultimately, the parties agreed to transfer 200,000 afy and conserve 100,000 afy for possible future acquisition by the Metropolitan Water District of Southern California (Metropolitan) and Coachella Valley Water District (Coachella).

Defendant State Water Resources Control Board (Board) approved the transfer. In *County of Imperial, supra,* 152 Cal.App.4th 13, County of Imperial (County) (amicus curiae herein for plaintiff Imperial County Air Pollution Control District (Air District)) filed two separate mandamus petitions in the trial court challenging various aspects of the Board's decision under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). The first petition named the Board as respondent, and Imperial and San Diego as real parties in interest. The second petition named Imperial as respondent and San Diego as real party in interest. Neither petition named Metropolitan or Coachella.[2]

Imperial demurred, arguing the County failed to name Metropolitan or Coachella, which were necessary parties in both proceedings. The trial court sustained the demurrers with leave to amend. Subsequently, the County amended the petitions, naming Metropolitan and Coachella as interested parties. Metropolitan, Coachella, and San Diego filed joint demurrers, arguing Metropolitan and Coachella could not be added after the statute of limitations ran. The trial court sustained the demurrers without leave to amend, finding Metropolitan and Coachella Valley indispensable parties and finding the

---

[2] The first petition, *County of Imperial v. State Water Resources Control Board* (Super. Ct. Sac. County, 2003, No. 03CS00082), lies at the heart of the current appeal and will be referred to as case No. 82.

2

statute of limitations had run. We affirmed the trial court's judgment sustaining the demurrers without leave to amend.

The parties are back before us over the issue of indispensable parties. The earlier parties, plus the Air District, return in this second round. On the same day the County filed its petition in case No. 03CS00082, the Air District filed a petition for a writ of administrative mandamus in the present case, challenging the Board's approval of the water transfer but failing to name Metropolitan or Coachella. The Board and San Diego filed demurrers, joined by Imperial, requesting dismissal on the grounds that the Air District failed to name indispensable parties Metropolitan and Coachella. The trial court sustained the demurrers without leave to amend. The Air District appeals, arguing the trial court abused its discretion in dismissing the action after finding Metropolitan and Coachella indispensable parties. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Although this litigation concerns numerous entities and has spawned a voluminous record, at its essence the petition rests upon the trial court's determination that Metropolitan and Coachella are indispensable parties. With this limited procedural question in mind, we review the factual and procedural background.

### Imperial and Colorado River Water

Imperial is the largest single holder of water rights on the Colorado River in California. In 1914 California initiated the water rights permitting system currently administered by the Board. Imperial was formed in 1911 to bring Colorado River water to California's Imperial Valley. Each year, Imperial provides enough water to irrigate 500,000 acres in the Imperial Valley. Imperial also delivers water to cities, schools, and businesses. (*Imperial Irr. Dist. v. U.S. E.P.A.* (9th Cir. 1993) 4 F.3d 774, 774-775.)

Metropolitan and Coachella also possess water rights on the Colorado River under an agreement among all California water rights holders known as the Seven Party Agreement of 1931 (Seven Party Agreement). The Seven Party Agreement placed water

3

rights holders in a priority system. Most of Imperial's water rights under this system take priority over most of Coachella's and over all of Metropolitan's. Based on its place in the priority system, Imperial is entitled to divert its full right to water before Metropolitan can divert any water at all. San Diego possesses no Colorado River water rights.

This priority system led to a conflict among Imperial, San Diego, Metropolitan, and Coachella. Imperial and San Diego contend Imperial may reduce its water use and designate another recipient to receive its unused water. In essence, Imperial may transfer excess water. Coachella and Metropolitan disagree and argue that under federal law, any water unused by Imperial is available to them under the priority system.

In the 1980's the Board found some of Imperial's water use practices unreasonable and wasteful. The Board directed Imperial to increase water conservation. One suggested measure by which Imperial could increase conservation was to transfer conserved water to a willing purchaser in exchange for funding to support Imperial's conservation efforts.

**Imperial and San Diego's Petition to the Board**

In 1998 Imperial and San Diego executed an agreement under which San Diego would fund water conservation measures within Imperial's service area in exchange for Imperial's transfer of up to 300,000 afy to San Diego (transfer agreement). Imperial and San Diego jointly petitioned the Board to approve changes in the point of diversion and place of use in Imperial's water rights permit to allow an annual transfer on a long-term basis of up to 300,000 afy of Colorado River water from Imperial to San Diego for up to 75 years. The petition noted the agreement was ineffective until completion of environmental review, when the agencies would determine whether to go forward with the project.

The Legislature has provided for Board approval of long-term transfers of water between water districts. (Wat. Code, §§ 1735-1737.) Water Code section 1735 states: "The board may consider a petition for a long-term transfer of water or water rights

4

involving a change of point of diversion, place of use, or purpose of use. A long-term transfer shall be for any period in excess of one year."

A request for approval of a long-term water transfer must be filed by the holder of the water right, permit, or license. (Cal. Code Regs., tit. 23, § 811.) A request for a change in point of diversion, place of use, or purpose of use must be filed by the rights holder. (Wat. Code, § 1701.)

Water Code section 1736 provides that the Board may approve a petition for transfer: "The board, after providing notice and opportunity for a hearing, including, but not limited to, written notice to, and an opportunity for review and recommendation by, the Department of Fish and Game, may approve such a petition for a long-term transfer where the change would not result in a substantial injury to any legal user of water and would not unreasonably affect fish, wildlife, or other instream beneficial uses."

The County protested the petition for approval of the transfer. The County argued the transfer would lead to detrimental third-party effects on the County's economy and environment. The County emphasized the impacts caused by the transfer's effects on the Salton Sea and the potentially severe air quality impacts associated with fallowing land and drying out the Salton Sea.

**Metropolitan and Coachella Protest the Transfer**

Metropolitan and Coachella protested the transfer petition, contending the transfer violated their priority rights under the Seven Party Agreement and the Board lacked jurisdiction because federal law preempted state regulation of Colorado River transfers. Metropolitan and Coachella indicated their objections could be resolved as part of a broader resolution of Colorado River issues.

**Quantification Settlement Agreement**

While the transfer petition was pending, negotiations began to reduce and redistribute California's use of Colorado River water in accordance with guidelines adopted by the Secretary of the Interior. These guidelines were designed to reduce

5

California's Colorado River water usage from 5.2 million afy to 4.4 million afy, in accordance with rules established by the Supreme Court in *Arizona v. California* (1963) 373 U.S. 546 [10 L.Ed.2d 542].

The quantification settlement agreement (QSA) negotiations involved high-level discussions among Colorado River water agencies, federal and state officials, and stakeholders to resolve long-standing disputes about quantification of Colorado River water rights. The disputes included reasonable and beneficial use of river water, transfers and exchanges between water users, federal delivery of surplus water to California, and various environmental and socioeconomic impacts to the County from implementation of the proposed QSA's.

The transfer of water from agricultural to urban uses formed a key element of the plan. The transfer between Imperial and San Diego was the largest such transfer. Those negotiations over the reduction of California's use of Colorado River water led to the negotiation of the QSA and the individual QSA's.

**The Protest Dismissal Agreement**

To resolve Coachella and Metropolitan's objections to the transfer agreement, Imperial, San Diego, Coachella, and Metropolitan entered into the protest dismissal agreement (PDA).

The PDA amended the transfer petition to reduce the water transfer to San Diego from 300,000 afy to 200,000 afy , and to make the 100,000 afy difference available for acquisition by Metropolitan and Coachella. Drafts of the agreements for these transfers, along with a draft of the QSA, were submitted as exhibits in the Board proceeding.

The Board sent out a public notice that it would now consider approving not only the proposed water transfer from Imperial to San Diego, but also the proposed transfers from Imperial to Coachella and Metropolitan. The Board notice stated that despite the parties' not using the word "transfer" for the water going to Coachella and Metropolitan,

6

the Board considered approval of an acquisition to be approval of a transfer.  The Board served a copy of the notice on the County.[3]

Metropolitan and Coachella agreed to withdraw their protests and allow the Board to hear and approve the transfer project, including the acquisition of water by Coachella and/or Metropolitan.[4]  The parties agreed that any decision by the Board on the transfer project would be nonprecedential, and San Diego would not use the Board's decision to argue in another proceeding that Board approval was required to make water available to Coachella or Metropolitan.  Mindful of federal preemption issues, all parties also agreed to urge the Board to include a statement that its decision "shall not establish the applicability or nonapplicability of California law or federal law to any of the matters raised by the Petition or any other Colorado River transfer or acquisition."

In comments before the Board at the time of the protest dismissal, Metropolitan argued the Board would not be considering approval of any action by Metropolitan or

---

[3]  The Board's revised notice states, in part:  "Petitioners stressed that they do not consider the proposed acquisition of water by [Coachella] and [Metropolitan] to be a transfer.  Petitioners have requested, however, a change in [Imperial's] Permit 7643 that would authorize the transfer of water to [Coachella] and [Metropolitan] under [Imperial's] permit.  Accordingly, this notice uses the word 'transfer' to describe the amendment to the petition."

[4]  The PDA states:  "The parties will urge the [Board] to schedule a hearing on the Petition as soon as all pertinent environmental review documents have been released for public comment.  The scope of the hearing . . . should encompass the conservation of up to 300,000 afy of Colorado River water, the transfer of up to 200,000 afy of conserved water to [San Diego] and the acquisition of an additional 100,000 afy of conserved water by [Coachella] and [Metropolitan], and the corresponding changes in point of diversion, place of use, and purpose of use to be made to [Imperial] Permit 7643. . . . Notwithstanding the continuing disagreement among the Parties about the jurisdiction of the [Board] over these issues . . . pursuant to the settlement agreement among the Parties, [Coachella] and [Metropolitan] agree that a [Board] hearing should take place to consider the conserved water transfer to [San Diego] and the conserved water acquisition by [Coachella], and the conserved water acquisition by [Metropolitan] . . . ."

Coachella: ". . . Metropolitan reminds the State Board that no party is seeking approval of a 'transfer' with respect to the possible conservation and acquisition by Metropolitan of up to 100,000 acre feet of water from [Imperial]."

**Subsequent Proceedings**

After withdrawing their protests before the Board, Metropolitan and Coachella ceased participating in the Board proceeding. Neither party submitted any briefing or exhibits, nor did either party participate in the Board's public hearing.

While the Board proceeding was pending, Imperial, as lead agency, prepared the draft and final environmental impact reports (DEIR and FEIR, respectively) for the water transfer from Imperial to San Diego. Imperial certified and submitted the DEIR and FEIR. Part of the DEIR project description includes the transfer of water by Imperial to San Diego, Coachella, and Metropolitan.

In an order adopted in October 2002 and amended in December 2002, the Board approved Imperial and San Diego's transfer petition. As requested by Imperial, the orders expressly clarified that the water districts were still to make the final decisions regarding all water transfers or acquisitions. The Board filed its notice of determination for approval of Imperial and San Diego's transfer petition. The Board relied on Imperial's transfer project FEIR.

However, on December 9, 2002, Imperial's board of directors declined to approve the proposed QSA or adopt the transfer project. Subsequently, the Board approved the QSA, but with conditions unacceptable to Metropolitan and Coachella. The agencies failed to meet the Department of Interior's deadline for QSA approval. January 2003 passed and none of the proposed QSA-related agreements, including the proposed agreements by which Metropolitan and Coachella would acquire water from Imperial, were finalized.

On January 21, 2003, the County filed its mandamus petition in case No. 82, naming the Board as respondent and Imperial and San Diego as real parties in interest.

8

The petition challenged the Board's order approving the transfer. The County did not name Metropolitan or Coachella.

That same day, the Air District filed a mandamus petition, the subject of the present appeal, challenging the Board's order approving transfer and the Board's failure to require adequate mitigation measures for air quality impacts. The petition named as real parties in interest Imperial and San Diego, but did not name Metropolitan or Coachella. Because of the absence of any final approval of the underlying transfer project, and by agreement of the parties, case No. 82 and the present case were stayed.

On October 2, 2003, Imperial approved the transfer project. On October 10, 2003, Imperial, Metropolitan, and Coachella signed the QSA and finalized the QSA-related agreements.

On June 14, 2007, we issued our decision in *County of Imperial*, *supra*, 152 Cal.App.4th 13. We found the trial court did not abuse its discretion in dismissing case No. 82 after finding Metropolitan and Coachella indispensable parties.

Following our decision in *County of Imperial*, the Board and San Diego demurred to the Air District's petition, arguing Metropolitan and Coachella were indispensable parties. Imperial joined in the two demurrers.

Following oral argument, the trial court sustained the demurrers without leave to amend. The court found alternative forums available for the Air District and the County to raise their CEQA arguments even if the case were dismissed. The court noted that in *County of Imperial* we relied in part on the "pendency of Case 83" in determining adequate forums existed to raise CEQA challenges to the transfer. However, the court determined the CEQA challenges in the coordinated cases offered the same type of relief to the Air District and the County that the current cases afforded.

The court concluded: "[T]he facts of Case 83 with respect to the adequacy of the alternative remedy are not fairly distinguishable from Case 82, and even if they were, the result would be the same based upon this Court's analysis. The Air Districts have

9

adequate opportunity for remedy if Case 83 is dismissed. As set forth in *County of San Joaquin v. SWRCB* (1997) 54 Cal.App.4th 1144, 1154-1157, and reiterated in *County of Imperial*, *supra* at 152 Cal.App.4th 39, such remedy need not be perfect or identical, but should afford the opportunity for the same general type of relief. In contrast, the primary concern articulated in *Deltakeeper v*[.] *Oakdale Irrigation District* (2001) 94 Cal.App.4th 1092 was that the EIR not escape review. There are multiple CEQA challenges to the QSA EIR remaining in these coordinated cases, including ones that address the air quality issues of concern to the Air Districts. The Court appreciates that the Air Districts may not have 'precisely the same claims' as they would have had they named [Metropolitan] and [Coachella], but that is not required."

The court also explored the remedies proposed by the Air District to avoid prejudice to the unnamed parties and found them insufficient. The court found these remedies could not avoid the potential prejudice to Metropolitan and Coachella such as the potential loss of the 100,000 afy intended for them, or the secondary impacts of more immediate reduced Colorado River diversions if the QSA unraveled. The court termed the unraveling of the QSA "a possibility, and one that must be taken seriously."[5]

Following entry of judgment, the Air District filed a timely notice of appeal.[6]

## DISCUSSION

### NECESSARY AND INDISPENSABLE PARTIES

Code of Civil Procedure section 389 (section 389) governs the joinder of parties and provides, in pertinent part:

[5] South Coast Air Quality Management District, a copetitioner at trial, did not join the County in this appeal. However, South Coast (before the trial court) proposed a potential remedy to the prayer for relief that would allow water transfers to Metropolitan and Coachella, but would halt transfers to San Diego pending additional CEQA review.

[6] We deny the Air District's motion for judicial notice filed June 17, 2009, and grant the Air District's motion for judicial notice filed March 8, 2010.

10

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.  If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable.  The factors to be considered by the court include:  (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

Subdivision (a) of section 389 defines the persons who ought to be joined if possible, often referred to as "necessary parties."  A determination that a party is a necessary party is the predicate for the determination of whether the party is indispensable.  Thus, subdivision (b) sets forth the factors the court should consider in determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable."

11

A court must consider fairness and equity in deciding whether a party is indispensable. A court has the power to proceed with a case even if indispensable parties are not joined. Courts must be careful to avoid converting a discretionary power or rule of fairness into an arbitrary and burdensome requirement that may thwart rather than further justice. (*People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 875-876.) In the CEQA context, "[t]he public has a right to insist on the adequacy of the environmental document upon which the agency makes its decision," and courts should avoid thwarting this purpose through the harsh application of indispensable party rules. (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1109 (*Deltakeeper*).)

Former Public Resources Code section 21167.6.5, as amended (Stats. 2004, ch. 522, § 1), which requires approval recipients to be named in CEQA litigation, states:

"(a) The petitioner or plaintiff shall name, as a real party in interest, *any recipient of an approval that is the subject of an action or proceeding brought pursuant to Section 21167, 21168, or 21168.5*, and shall serve the petition or complaint on that real party in interest, by personal service, mail facsimile, or any other method permitted by law, not later than 20 business days following service of the petition or complaint on the public agency.

"(b) The public agency shall provide the petitioner or plaintiff, not later than 10 business days following service of the petition or complaint on the public agency, with a list of responsible agencies and any public agency having jurisdiction over a natural resource affected by the project.

"(c) The petitioner or plaintiff shall provide the responsible agencies, and any public agency having jurisdiction over a natural resource affected by the project, with notice of the action or proceeding within 15 days of receipt of the list described in subdivision (b).

12

"(d) Failure to name potential parties, other than those real parties in interest described in subdivision (a), is not grounds for dismissal pursuant to Section 389 of the Code of Civil Procedure.

"(e) Nothing in this section is intended to affect an existing right of a party to intervene in the action." (Italics added.)

**Standard of Review**

We review the trial court's indispensable party determination under section 389 for an abuse of discretion. The balancing required under section 389, which directs the court to balance equities, address fact-specific considerations, and render a pragmatic decision, mandates a deferential standard. (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1151-1153 (*County of San Joaquin*).)

**Adequate Remedy**

Under section 389, the court must consider whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder. (§ 389, subd. (b), factor (4).) This factor is the wellspring from which this appeal flows.

**Prior Appeal**

In *County of Imperial*, the trial court found the County would have the ability to assert its interests in the coordinated proceedings. The court stated: " 'Case No. 03CS00083 remains pending before the Court, and the Court has announced in its case management plan that all parties to all coordinated cases will be allowed to brief all issues, if they desire.' " (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 39.)

On appeal, the County argued the opportunity to submit briefs in another party's case provides no substitute. According to the County: " 'That case could settle, and of course the County would have no opportunity to appeal an adverse judgment. As the County's CEQA claims were more expansive than those asserted in other mandamus actions, it cannot assume respondent Court would allow it to brief issues not otherwise

13

raised. The County should not be relegated to the status of cheerleader in someone else's game, when the County has the most at stake.' " (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 39.)

In upholding the trial court's finding, we noted " 'the standard is whether appellants have an "adequate remedy," not whether all issues are identical.' [Citation.]" (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 39.) We noted that in addition to participating in other CEQA challenges to the EIR, the County has also answered Imperial's validation action, providing the County an alternative means for asserting its CEQA claims against the project. The County has asserted Imperial's failure to comply with CEQA as a defense to Imperial's pending validation action. (*Ibid*.)

However, the County claimed the validation action provided "a poor alternative, since validation cases 'often become extraordinarily complex and time-consuming affairs.' " (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 39.) We found, "The County's complaints regarding delay in the validation action may be valid, but they do not provide a basis for finding that the trial court abused its discretion in finding an adequate remedy if the County is dismissed." (*Id*. at p. 40.)

We also noted the situation on appeal differed markedly from the situation we encountered in *Deltakeeper*, *supra*, 94 Cal.App.4th 1092, where dismissal of the action would have deprived the plaintiffs of any remedy. In *Deltakeeper*, the adequacy of the EIR would have escaped any judicial scrutiny, and we reasoned such a harsh result was unnecessary when the unnamed parties shared a unity of interest in the CEQA litigation. (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 40, citing *Deltakeeper*, at p. 1109.)

In contrast, in *County of Imperial* no such unity of interest existed among the parties, and the County could mount a CEQA challenge in the coordinated case and in its opposition to Imperial's validation action. Under these circumstances, and based on the record before us, we could not find the trial court abused its discretion in applying the

14

section 389, subdivision (b) factors and dismissing the action.  (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 40.)

**Current Appeal**

In sustaining the demurrers without leave to amend, the trial court found alternative forums existed for the Air District to raise its CEQA arguments even if case No. 83 were dismissed.  The court noted that in *County of Imperial* we relied only in part on the pendency of case No. 83 in finding adequate alternative forums existed to consider CEQA claims.  In addition, liberal briefing rules in the coordinated cases offered the Air District the "same general type of relief" that case no. 83 offered.  In addition, the trial court in case No. 83 found the proposed remedy offered by South Coast failed to relieve the prejudice to the unnamed parties.  The proposal also would invalidate the FEIR, which would impact transfers between the various districts.

The Air District and the County argue the trial court erred in sustaining the demurrer without leave to amend because we relied upon the viability of case No. 83 in upholding the dismissal of case No. 82.  We disagree.

The availability of an alternative forum, or forums, is only one of the four factors considered in determining indispensable party status under section 389, subdivision (b). Unlike a house of cards, the failure of one factor does not immediately bring down the whole edifice.

Although the County and the Air District contend dismissal of case No. 83 automatically divests the Air District of an alternative forum for CEQA claims, our opinion made clear multiple forums, not just case No. 83, offered the Air District the opportunity to pursue those claims.

In *County of Imperial*, we quoted the trial court's determination that in addition to case No. 83, which was then pending before the court, " 'the Court has announced in its case management plan that all parties to all coordinated cases will be allowed to brief all issues, if they desire.' "  (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 39.)  We

15

found the County could mount a CEQA challenge in the coordinated case and in its opposition to Imperial's validation action. (*Id.* at p. 40.)

The coordinated cases include the validation action, the POWER case, the County case, and the Morgan case, all of which challenge the CEQA documents relied upon by Imperial in approving the QSA agreements. The Air District has filed an answer in the validation action, raising affirmative defenses. In addition, the Air District is allowed to brief as amicus issues raised by the parties in the coordinated cases. Therefore, despite the dismissal of case No. 83, alternative forums exist in which the Air District may pursue its CEQA challenges.[7]

The Air District and the County also argue case No. 83 is the only remaining case raising CEQA challenges to the Board's reliance on the FEIR in approving the water transfers. However, under section 389, the question is not whether the alternative forums are identical, but whether the parties have an adequate remedy. We consider whether the alternative forums provide the "same general type of relief." (*County of San Joaquin*, *supra*, 54 Cal.App.4th at pp. 1154, fn. 7.)

Here, the FEIR is also at issue in other coordinated cases that challenge Imperial's approval of the QSA. The Air District raises CEQA issues in the validation action, arguing the FEIR and addendum did not adequately analyze and mitigate air quality impacts.

The County argues the Board conducted its CEQA review in a "bizarre manner that should not go unreviewed and uncorrected." According to the County, the Board

---

[7] The Air District contends our decision not to delete references to case No. 83 in *County of Imperial*, as requested by Imperial, reveals "that the ongoing validity of Case 83 formed a necessary component of this Court's decision to confirm dismissal of Case 82." However, our decision not to delete references to case No. 83 has no impact on our conclusion that multiple alternative forums afforded the Air District an opportunity to mount CEQA challenges.

16

made its decisions under CEQA prior to Imperial's making its decision on the QSA. The County, citing no authority, argues the Board was not permitted to approve the water transfer prior to Imperial's approval of the larger project analyzed in the FEIR.

As the responsible agency, the Board was required to consider the FEIR certified by Imperial. (Cal. Code Regs., tit. 14, §§ 15050 & 15096.) The County points to no authority requiring the lead agency to act on a project prior to the responsible agency's approval of the portion of the project it is responsible for. The Board was required to consider the FEIR in determining whether the proposed transfers comported with Water Code section 1736. The Board considered the FEIR and found that it addressed the potential environmental and socioeconomic impacts.

## SUPPLEMENTAL BRIEFING

We requested supplemental briefing from the parties "expressing their views as to the effect, if any, of this court's decision in Quantification Settlement Agreement Cases (2011) 201 Cal.App.4th 758 (C064293, filed Dec. 7, 2011) on the issues raised in the present appeal." *Quantification* involved three coordinated cases, including a validation action brought by Imperial. The trial court found invalid several agreements by which Imperial agreed to provide water to other agencies in exchange for money to fund conservation efforts. A joint powers agreement imposed an unconditional contractual obligation on the state to pay excess mitigation costs. (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 773-775 (*Quanitification*).)

We reversed and remanded to the trial court for further proceedings, finding the joint powers agreement did not violate the Constitution. We found the trial court lacked jurisdiction to rule on compliance with federal environmental laws. (*Quantification*, *supra*, 201 Cal.App.4th at pp. 775-776.)

Apropos to this appeal, in *Quantification*, Coachella, Metropolitan, and San Diego argued the trial court abused its discretion in denying their motion to dismiss the County's CEQA action with prejudice because the County failed to name as real parties

17

in interest the United States and numerous Indian tribes that were parties to a settlement agreement. (*Quantification*, *supra*, 201 Cal.App.4th at pp. 847-848.) The trial court determined the United States and the Indian settlement parties were recipients of approval under Public Resources Code section 21167.6.5 since the County's CEQA action challenged the Quantification Settlement Agreement program environmental impact report (PEIR) and, if successful, would set it aside; and the project covered by the Quantification Settlement Agreement PEIR included the agreement to which the United States and the Indian settlement parties are parties. However, the trial court found the United States and the Indian settlement parties were not indispensable and denied the motion to dismiss. (*Quantification*, at p. 848.)

On appeal, we reviewed Public Resources Code section 21167.6.5 and concluded the trial court properly determined the United States and the Indian settlement parties were necessary parties. (*Quantification*, *supra*, 201 Cal.App.4th at pp. 848-855.) We then considered whether the trial court abused its discretion in finding they were not indispensable parties under Code of Civil Procedure section 389, subdivision (b), utilizing the four factors listed in the statute. (*Quantification*, at p. 855.) We noted the burden was on Coachella, Metropolitan, and San Diego to establish the court abused its discretion by concluding that in equity and good conscience the County's CEQA action should proceed even in the absence of the United States and the Indian settlement parties. (*Ibid.*)

None of the parties challenged the trial court's determination that the unnamed parties might be prejudiced by a judgment rendered in their absence. (§ 389, subd. (b), factor (1); *Quantification*, *supra*, 201 Cal.App.4th at p. 856.) We also found the trial court could have reasonably concluded that limiting the County's CEQA action to a challenge to the Quantification Settlement Agreement would lessen, although not avoid entirely, potential prejudice to the absent parties. (§ 389, subd. (b), factor (2); *Quantification*, at pp. 856, 858.) Nor were we persuaded that the court abused its

18

discretion in finding a judgment entered in the absence of the parties would be adequate, given the lack of argument on the issue by the parties challenging the decision. (§ 389, subd. (b), factor (3); *Quantification*, at pp. 858-859.)

It is the final factor under section 389, subdivision (b) that resonates with the issues on appeal before us:  whether the Air District will have an adequate remedy if the action is dismissed for nonjoinder.  The trial court in *Quantification* noted that because the other CEQA actions then pending did not involve the sufficiency of the Quantification Settlement Agreement PEIR, the validation action was the only other case that involved the PEIR by way of proposed validation of certain of the agreements addressed in the PEIR.  In addition, the court determined the only way in which the PEIR was at issue in the validation proceedings was in the generic claim of the District that it had done everything necessary to generate valid agreements, including CEQA compliance through the PEIR.  The trial court termed this " 'a very limited alternate remedy.' " (*Quantification*, *supra*, 201 Cal.App.4th at p. 859.)

On appeal, we stated:  "In essence, the trial court appeared to recognize (1) that the Quantification Settlement Agreement PEIR is at issue in the validation action only by virtue of the answering parties' denial of [Imperial's] allegation that it 'complied with all laws necessary for contracts A through M to be valid, legal, and binding, including . . . all applicable California . . . Environmental Laws' and (2) that the only remedy the County will have a possibility of obtaining in the validation action is a judgment that the agreements that are the subject of that action are not valid.  What the County will *not* be able to obtain in the validation action is any relief directly involving the Quantification Settlement Agreement PEIR, including a 'writ of mandate setting aside the certification of . . . the[] PEIR,' which is part of the relief the County is seeking in its CEQA action." (*Quantification*, *supra*, 201 Cal.App.4th at p. 859.)

On appeal, Coachella, Metropolitan, and San Diego argued the trial court abused its discretion in determining that the validation action provided a very limited remedy for

19

the County. The parties cited our prior opinion in *County of Imperial*, *supra*, 152 Cal.App.4th 13, stating we had previously determined that the validation action provided a sufficient alternative forum for the County's CEQA issues. (*Quantification*, *supra*, 201 Cal.App.4th at pp. 859-860.)

In *Quantification* we responded: "But this court [in *County of Imperial*] determined no such thing. We did observe that the County could 'mount a CEQA challenge [to a different EIR] in [another] coordinated case and in its opposition to [the] validation action.' [Citation.] But that observation simply supported the conclusion that the trial court did not abuse its discretion 'in applying the Code of Civil Procedure, section 389, subdivision (b) factors' *in that case.* [Citation.] Our conclusion there has no bearing here and certainly does not compel the conclusion that the validation action necessarily provides the County with a 'sufficient alternative forum' to address its challenges to the Quantification Settlement Agreement PEIR such that it was an abuse of discretion for the trial court to allow the County's CEQA action to go forward." (*Quantification*, *supra*, 201 Cal.App.4th at p. 860.)

Here, as in *Quantification*, an appellant seeks to invoke a prior opinion involving completely different facts and issues as binding precedent in the present case. The Air District contends, "If as this Court has now found in the QSA Cases that the validation action is not an adequate remedy for the County's CEQA action challenging the QSA PEIR, it likewise cannot be an adequate remedy for the Air District's CEQA action challenging the State Board's approval of the Premature Transfer EIR." (Italics omitted.)

It is with a sense of déjà vu that we point out the analysis in *Quantification* "simply supported the conclusion that the trial court did not abuse its discretion 'in applying the Code of Civil Procedure, section 389, subdivision (b) factors' *in that case* [referring to *County of Imperial*, *supra*, 152 Cal.App.4th 13]." (*Quantification*, *supra*, 201 Cal.App.4th at p. 860.) Mirror-like, we note "Our conclusion there has no bearing here," where we are considering different parties, different facts, and different issues.

20

(*Ibid*.) Our section 389, subdivision (b) analysis in *Quantification* was not dictated by our earlier conclusions in *County of Imperial*. Likewise, our analysis of section 389, subdivision (b) factors is not circumscribed by or beholden to our analysis in *Quantification*.

In addition, in *Quantification* we remanded the validation action and the CEQA actions for further proceedings. In the course of finding that the trial court did not abuse its discretion in denying the motion to dismiss for failure to name the Indian settlement parties, we described the subject of the action: "[W]here (as here) a CEQA action challenges the adequacy of an EIR, the approval that is 'the subject of' that action is the approval of the project that was the subject of the EIR. Here, that project was more than just the Quantification Settlement Agreement; it was that agreement *and* all of the related actions addressed in the Quantification Settlement Agreement PEIR that were approved based on the certification of the PEIR. Those related actions included the water transfers under the Allocation Agreement, to which the United States and the Indian Settlement Parties were parties." (*Quantification*, *supra*, 201 Cal.App.4th at p. 854.)

Among the water transfers we found part of the litigation in *Quantification* were the 2002 transfer agreement between Imperial, San Diego, Coachella, and Metropolitan, at issue in the present case. (*Quantification, supra,* 201 Cal.App.4th at p. 788.) The plaintiff in our case, the Air District, is one of the parties challenging the EIR and mounting CEQA challenges to the validation action. Since the transfer challenged and the party challenging the transfer on CEQA grounds remain in the litigation, there is an adequate remedy despite dismissal of this action for nonjoinder.

## DENIAL OF LEAVE TO AMEND

The Air District contends that denial of leave to amend is per se an abuse of discretion if the pleading does not show on its face that it is incapable of amendment. In support, the Air District cites cases in which defects in the pleadings were capable of amendment, and thus each complaint was capable of amendment "on its face." (*Kong v.*

21

*City of Hawaiian Gardens Redevelopment Agency* (2000) 108 Cal.App.4th 1028; *McDonald v. Superior Court* (1986) 180 Cal.App.3d 297; *King v. Mortimer* (1948) 83 Cal.App.2d 153.) In those cases, the court erred in failing to allow amendment.

The Air District derives from these cases the rule that "[d]enial of leave to amend is appropriate only when it *conclusively* appears that there is no possibility of alleging facts under which recovery can be obtained." However, in the cases the Air District cites, the appellate court found failure to allow amendment an abuse of discretion because, given the facts of the cases, there was a reasonable possibility that the pleadings were capable of amendment to state a cause of action by curing factual defects. These cases do not stand for the proposition that a court errs in denying amendment unless it "conclusively" appears there is no possibility of alleging a cause of action.

Despite repeatedly referencing per se reversal based on denial of leave to amend when the pleading shows on its face it is capable of amendment, the Air District never explains how its complaint was capable of amendment on its face. Instead, the Air District argues it proposed to amend its petition to allow the water transfers to Metropolitan and Coachella to proceed while the Board conducts further environmental review if the trial court so ordered in case No. 83. This amendment does not cure any factual defect on the face of the Air District's petition and is not per se reversible.

Instead, we review the trial court's denial of leave to amend for an abuse of discretion. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) The Air District bears the burden of showing such an abuse of discretion. (*Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1118.) Where an amendment could not have cured the defective pleading, the trial court has not abused its discretion. (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1437.)

The Air District sought to amend its petition by severing all remedies that it believes might result in prejudice to Coachella or Metropolitan by suspending only the transfer of water from Imperial to San Diego until completion of a revised EIR.

22

According to the Air District: "Under the revised prayer, the Water Order is not disapproved so that [Coachella] and [Metropolitan] can still acquire water. None of [Imperial's] or [San Diego's] other activities (*i.e.*, Water Order conditions of approval) are likewise suspended. Because the Water Order is not set aside, there is no transfer stoppage under the QSA Agreements for [Coachella] and [Metropolitan]. Therefore, there is no immediate and serious prejudice to [Coachella] and [Metropolitan] from not having party status in Case 83."

In effect, the Air District seeks to sever the remedies as they pertain to Coachella and Metropolitan. However, the Air District disagrees it seeks severance. Instead, under the Air District's analysis, if the Coachella and Metropolitan water transfers are "not in the Petition, it would not need to be severed from the [San Diego] water transfer under [Public Resources Code s]ection 21168.9 in any mandate the court issued." In other words, under the proposed amendment, the Coachella and Metropolitan water transfers simply disappear as if they had never existed.

We are not convinced by the Air District's efforts to label its amendment as anything other than an effort to sever Coachella and Metropolitan. In order to sever remedies in a CEQA action, the trial court must find "(1) the portion of specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the project to be in noncompliance with this division." (Pub. Resources Code, § 21168.9, subd. (b).)

We rejected a similar severance proposal in *County of Amador v. City of Plymouth* (2007) 149 Cal.App.4th 1089, 1112-1114. There, the plaintiff argued Public Resources Code section 21168.9 required that the trial court sever any provisions of a municipal services agreement that violated CEQA, leaving the rest of the agreement enforceable. The trial court declined to sever and we affirmed, finding the municipal services agreement's CEQA problems were so pervasive severance was impossible. (*County of Amador*, *supra*, 149 Cal.App.4th at pp. 1112-1113.)

23

As the Air District admits, the trial court has the discretion to allow parts of a project to proceed while CEQA violations are addressed.  Here, the trial court rejected the amendment, finding it would not sufficiently lessen the prejudice to the unnamed parties. The court acted well within its discretion.

The trial court observed that there was still a potential loss of 100,000 afy intended for the parties that they would not be present to defend.  In addition, unraveling of the entire agreement remained a possibility.  The court also noted the issue of allocation of additional mitigation obligations remained should the transfers to Metropolitan and Coachella continue while those to San Diego cease.  These factors, along with the court's fear that the revised remedy could be "unrealistic" since water transferred to Metropolitan and Coachella would not have any less an impact on air quality than if the water were transferred to San Diego, led the court to conclude the potential prejudice to the unnamed parties "is not necessarily abated by the Air Districts' [*sic*] proposal."  We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Respondents and real parties in interest shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                        RAYE                    , P. J.



We concur:



            BLEASE            , J.



            BUTZ            , J.

24